# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2298 | **DATE** | 11/22/2004 |
| **CASE TITLE** | Jamsports vs. Paradama Productions | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies the Clear Channel defendants' motion in limine to bar JamSports from presenting lost-profits claim (203-1,2, 205-1,2, 206,1,2) and defendant Paradama Productions, Inc.'s motion in limine to exclude evidence of lost profits (207-1). The Court also denies Clear Channel's motion to preclude JamSports from filing a new expert report (228-1). Finally, the Court denies JamSports' motion to strike Clear Channel's reply brief (234-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 24 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | rbf | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | | date mailed notice | |
| OR | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JAMSPORTS AND ENTERTAINMENT, LLC, )
)
              Plaintiff, )
)
vs. ) Case No. 02 C 2298
)
PARADAMA PRODUCTIONS, INC., d/b/a )
AMA Pro Racing; CLEAR CHANNEL )
COMMUNICATIONS, INC.; SFX )
ENTERTAINMENT, INC., d/b/a Clear )
Channel Entertainment; and SFX MOTOR )
SPORTS, INC., d/b/a Clear Channel )
Entertainment Motor Sports, )
)
             Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The defendants in this antitrust / breach of contract / tortious interference case have moved *in limine* to bar the plaintiff from presenting lost profits claims. For the reasons stated below, the Court denies the defendants' motions.

### Discussion

Familiarity with the Court's decision on the parties' summary judgment motions, *see JamSports and Entertainment, LLC v. Paradama Productions, Inc.*, 336 F. Supp. 2d 824 (N.D. Ill. 2004), is presumed, and thus we will forego detailed discussion of JamSports' remaining claims. For present purposes, it will suffice to say that what remains are a claim against the Clear Channel defendants of monopolization in violation of 15 U.S.C. § 2; a claim against AMA Pro for breach of contract; claims against AMA Pro for breach of contract or promissory estoppel;

and claims against the Clear Channel defendants for tortious interference with contract or prospective advantage.

1.  **Antitrust claims**

The Clear Channel defendants have moved to bar JamSports from presenting evidence regarding the profits it says it lost as a result of Clear Channel's anticompetitive conduct. In particular, Clear Channel seeks to preclude JamSports' damages expert Stephen Siwek from testifying. Though certain aspects of Clear Channel's attack on Siwek consist of a challenge to admissibility of evidence, the motion as a whole amounts to a request for summary judgment (as Clear Channel itself has suggested at prior court hearings).

Damages in an antitrust market exclusion case consist of the amount that the plaintiff would have made but for the defendant's anticompetitive conduct. "In economic terms, the amount of damages is the difference between what the plaintiff could have made in a hypothetical free economic market and what the plaintiff actually made in spite of the anticompetitive activities." *Dolphin Tours, Inc. v. Pacifico Creative Service, Inc.*, 773 F.2d 1506, 1510 (9th Cir. 1985) (citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264, (1946)). Clear Channel argues that Siwek's lost profits analysis derives from an assumption that had JamSports not been improperly excluded from promoting a supercross series, JamSports would have had the field to itself, without competition by Clear Channel. According to Clear Channel, this assumption is contrary to a key premise upon which the Court sustained JamSports' single remaining antitrust claim, and in any event is unsupported by the evidence. We deal with each of these arguments in turn.

In addressing Clear Channel's summary judgment motions on the antitrust claims, the

Court rejected Clear Channel's argument that JamSports was claiming only that it was prevented from replacing Clear Channel as the monopolist in the market for promotion of supercross – a theory that, Clear Channel contended, was insufficient as a matter of law. In this regard, the Court stated that

> [t]hough JamSports certainly would have liked for Clear Channel to stop promoting supercross entirely if JamSports won the AMA contract, a jury could find that Clear Channel would have promoted a supercross series to compete with JamSports' AMA-sanctioned series. More pointedly, a reasonable jury could find that had Clear Channel not prevented JamSports from promoting the AMA-sanctioned supercross series, both firms would have promoted competing series, resulting in increased output and, potentially, decreased ticket prices.

*JamSports*, 336 F. Supp. at 836-37 (footnote omitted). Clear Channel argues that Siwek's lost profits analysis abandons, and is completely contrary to, the "ongoing competition" theory upon which the Court relied in denying summary judgment. Specifically, Clear Channel contends that Siwek ruled out any possibility of competition by Clear Channel.

Even were this so, it would not by itself require exclusion of Siwek's testimony. As JamSports notes, it has an alternative theory of antitrust injury which the Court has not precluded. JamSports contends that under the Seventh Circuit's decision in *Fishman v. Estate of Wirtz*, 807 F.2d 520 (7th Cir. 1986), injury to the competitive process can give rise to a cognizable antitrust claim even if the plaintiff, had it not been excluded from the market, simply would have displaced a monopolist defendant, and even if the defendant's conduct had no measurable effect on consumers. Clear Channel has argued that *Fishman* is no longer good law and that the views of the dissent in that case now carry the day in the Seventh Circuit. But as this Court noted in the summary judgment ruling, "the Seventh Circuit has never explicitly overruled *Fishman*, and we are reticent to find that it has done so *sub silentio*." *JamSports*, 336 F. Supp.

3

2d at 836. For this reason, and to avoid the need to retry the case were we to guess wrongly that the Seventh Circuit would not today follow *Fishman*, the Court will permit JamSports to present its *Fishman* theory at trial.[1] Thus even if Clear Channel were correct that Siwek's analysis assumes away the possibility of competition, that would not require excluding the analysis.

The *Fishman* theory aside, Siwek's report arguably can be read as indicating that he assumed Clear Channel would not have competed with JamSports in the "but for" world in which antitrust damages are assessed. Specifically, Siwek stated that

> [t]he damage calculations also assume that, but for the conduct of the defendants, the plaintiff would have promoted the AMA Pro Racing Supercross Series with little likelihood of <u>additional</u> competitive entry into Supercross by Clear Channel during the term of the contract. For this reason, the damage calculations have not been reduced to reflect some assumed level of Supercross business that would have switched from the AMA Supercross Series to a hypothetical Clear Channel series.

Siwek 9/14/04 Report ¶ 106 (emphasis in original).

But if one reads on, Siwek's report is best read as indicating not that there would be no competition at all, but rather that there would be no *effective* competition that would have affected JamSports' profits in the "but for" world:

> Facing these facts [support of a JamSports - AMA Pro series by original equipment manufacturers, or OEMs], it is clear that a decision by Clear Channel to compete in an alternative, head-to-head Supercross series would be fraught with financial peril. The Clear Channel Series would be compelled to showcase inferior riders who had not been selected for the factory teams. The Clear Channel Series' riders would also be compelled to compete using inferior (non-factory) motorcycles. The Clear Channel Series would also need a new

---

[1] Because JamSports presumably will be presenting two alternative theories, it may be necessary to provide particularized instructions and/or special interrogatories to the jury so that in the event of a verdict for JamSports this Court and, if necessary, the Seventh Circuit can sort out whether JamSports prevailed on a *Fishman* theory alone, or also on an "injury to consumers" theory.

4

sanctioning body, such as the FIM, that would not likely have substantial experience in US Supercross.

...

For these reasons, it is far more likely that if Clear Channel were to have competed at all in Supercross during the term of the agreement, that competition would likely have sought to capitalize on Clear Channel's relationship with FIM and would have focused heavily if not entirely on non-US markets.

*Id.* ¶¶ 109, 112.

Likewise, when he was deposed, Siwek made it clear that he had not completely ruled out the possibility of competition by Clear Channel:

> Q: ... You've assumed for purposes of your damages model, that there would be no competing Clear Channel series, is that correct?
>
> A: I haven't explicitly said there would be none. I said there was – very unlikely that there would be a competing series to the point that this would have to be reflected in my model.
>
> ...
>
> Q: And you doubt that they [Clear Channel] would do it all, correct?
>
> A: I doubt that they would do it at all, but it's not impossible that they would do it.
>
> Q: And you didn't account for them doing it at all in your calculations?
>
> A: I assumed that whether they had done it or not there would be no need to offset the damage calculations for that possibility.
>
> Q: So you assumed that even if Clear Channel had run an event or two, it would not have caused any decline in attendance or revenues [for JamSports], correct?
>
> A: Based on the assumptions in the but-for world, yes.

Siwek Dep. 109, 111-12.

In sum, though Siwek's report arguably can be read as including an assumption contrary to JamSports' non-*Fishman* theory, that is not the best reading of the report. The Court therefore rejects Clear Channel's contention that Siwek's report is inconsistent with the primary theory upon which we upheld JamSports' remaining antitrust claim.

Clear Channel's primary argument for excluding the lost profits evidence is that Siwek's purported assumption that Clear Channel would not compete is unsupported by the evidence. The testimony of an expert may be excluded if it lacks a foundation in the evidence or is based on unwarranted assumptions. *See MCI Communications Corp. v. AT&T Corp.,* 708 F.2d 1081, 1161, 1166 (7th Cir. 1983); *see also, e.g., Group Health Plan, Inc. v. Phillip Morris USA, Inc.,* 344 F.3d 753, 760 (8th Cir. 2003); *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1056 (8th Cir. 2000). As the Court has noted, we do not read Siwek as having assumed that Clear Channel would not have competed at all. But that aside, the evidence forwarded by Clear Channel does not undermine Siwek's conclusions as a matter of law. There is, to be sure, a good deal of evidence that Clear Channel planned to attempt to compete with JamSports even if JamSports had been able to promote the AMA Pro Supercross series. But there are numerous disputed issues regarding whether, and the extent to which, Clear Channel would have been able to do so, and how, if at all, this would have affected JamSports' profits from the AMA series. Clear Channel has not provided the Court with a sufficient basis to take the evaluation of these matters, and thus the consideration of JamSports' lost profits evidence, out of the hands of the jury.

Clear Channel also argues that the evidence establishes that JamSports lacked the necessary preparedness to enter the market. To recover damages in a market exclusion case, the

plaintiff must show it was prepared to enter the market. *See, e.g., Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 475 (7th Cir. 1982) ("*Grip-Pak I*"). This is partly a question of standing – the plaintiff's ability to prove an injury – and partly a question of whether damages can be proved with reasonable certainty. *See Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 651 F. Supp. 1482, 1501 (N.D. Ill. 1986) (decision following remand) ("*Grip-Pak II*").

The fact that JamSports was never able actually to promote a supercross tour does not preclude it from recovering damages. "There would be a big gap in the damage remedies of the antitrust laws if [section 4 of the Clayton Act] were read to prevent the recovery of damages by all would-be entrants." *Grip-Pak I*, 694 F.2d at 475. The key problem involves "quantifying lost hopes. While damages for loss of future earnings and profits are familiar items in tort and contract cases, the problem of measurement is greater when the loss occurs in a market that the plaintiff is not yet in." *Id.* To "balance the interest in deterrence against the concern with measurement," courts, including the Seventh Circuit, have required a plaintiff that has not yet entered the market "to show that it intended to enter and was prepared to do so within a reasonable time" as a prerequisite to collecting lost profits for being excluded. *Id.* (citing cases).

As the intent and preparedness requirement is generally interpreted, "only a plaintiff who takes demonstrable steps to enter an industry can recover projected lost profits as antitrust damages." *Grip-Pak II*, 651 F. Supp. at 1501. The plaintiff's preparedness to enter the market is determined by assessing its ability to finance the business; consummation of the requisite contracts; affirmative action to enter the business; and background and experience in the prospective business. *See, e.g., In re Dual Deck Video Cassette Recorder Antitrust Litigation*, 11 F.3d 1460, 1465 (9th Cir. 1993); *Hayes v. Solomon*, 597 F.2d 958, 973 (5th Cir. 1979); *see also,*

*Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 126 (1969).

First, JamSports took affirmative steps to enter the business – among other things, by signing the letter of intent with AMA Pro. Second, in terms of contracts, JamSports thus had, at least until its AMA deal was allegedly undermined by Clear Channel, the key contract it needed to enter the industry, that is, a deal with AMA Pro to promote the AMA Pro-sponsored supercross series. There is also evidence that JamSports had taken other steps in preparation to promote the series, including booking venues and forging a partnership with Speedvision for television coverage. Third, though JamSports obviously had no experience in promoting supercross – the market having been allegedly monopolized by Clear Channel for several years before – it had significant experience in promoting entertainment events,[2] and AMA Pro likewise believed that JamSports was fully qualified to promote the series.

JamSports' evidence of financial backing may be the weakest link in its claim of "intent and preparedness." But a jury reasonably could find, based on the evidence JamSports has offered, that it had sufficient financial wherewithal from its principals to fund operations until outside financing was obtained, and that it was well on the way to obtaining outside funding, until the rug was pulled out as a result of Clear Channel's allegedly anticompetitive activity. The Court finds no support in the law for a hard-and-fast rule that full financing, signed on the bottom line, must be proven as a prerequisite to recovery of damages for exclusion from a market. If such a rule existed, it would effectively immunize a monopolist that was an efficient enough

---

[2] The Court rejects Clear Channel's argument that JamSports' reliance on its experience in promoting other events is fatally inconsistent with its proposed definition of the relevant market as limited to supercross. As JamSports argues, Clear Channel's attempt to equate the two amounts to a comparison of apples to oranges.

8

violator of the antitrust laws to quickly nip in the bud any nascent competitive efforts. This would undermine the deterrence rationale cited by the Seventh Circuit in *Grip-Pak I* as part of the underpinning for the intent-and-preparedness test. *See Grip-Pak I*, 694 F.2d at 475. As the court said in that case, "[t]he whole purpose of the 'intention and preparedness' test is to allow recovery of damages in cases where the plaintiff has not entered the business in which he is seeking lost profits." *Id.*

For these reasons, the Court denies Clear Channel's motion *in limine* with regard to lost profits on the antitrust claim.

### 2. State law claims

Both Clear Channel and AMA Pro seek to preclude JamSports' recovery of lost profits on its state law claims. They argue that the lost profits claim is overly speculative and is barred by a rule of Illinois law that restricts the recovery of lost profits by new businesses.

Speculative damages are not recoverable under Illinois law. *See, e.g., Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 316, 515 N.E.2d 61, 66 (1987). And as a general rule, a start-up company that has not yet begun to operate is not entitled to recover lost profits. *See, e.g., Drs. Sellke & Conlon, Ltd. v. Twin Oaks Realty, Inc.*, 143 Ill. App. 3d 168, 174, 491 N.E.2d 912, 917 (1986). But there is no "inviolate rule that a new business can never prove lost profits." *Milex Products, Inc. v. Alra Laboratories, Inc.*, 237 Ill. App. 3d 177, 192, 603 N.E.2d 1226, 1237 (1992). Where there is concrete evidence from which the lost profits for a new venture can be determined to a reasonable degree of certainty, they may be recovered. *See id.* (allowing profits to be proven by evidence of an established market for the plaintiff's new product); *Malatesta v. Leichter*, 186 Ill. App. 3d 602, 621-22, 542 N.E.2d 768, 782 (1989)

(allowing profits to be proven by evidence of profits earned by another person who operated the same business). *See also, Fishman,* 807 F.2d at 555-58 (similar to *Malatesta*); *Rhodes v. Sigler,* 44 Ill. App. 3d 375, 380, 357 N.E.2d 846, 850 (1976) (same)

JamSports has provided a sufficient basis to take its lost profits claim out of the realm of impermissible speculation and thus permit the claim to be presented to the jury. As was the case in *Malatesta* and *Fishman* (which, like the present case, involved a tortious interference claim in addition to an antitrust claim), JamSports bases its claim not on unsupported speculation, but rather on the profits Clear Channel earned promoting the AMA Pro series. The Court recognizes that there are differences in JamSports' prospective supercross operation and Clear Channel's established one that could affect whether JamSports would have earned as much as Clear Channel. But as the court noted in *Malatesta,* "[a] finding that profits are too speculative based on these differences ... would preclude recovery for intentional interference with prospective advantage in most instances" and thus would effectively write such tort claims out of existence. *Malatesta,* 186 Ill. App. 3d at 622, 542 N.E.2d at 783. The Court finds JamSports' evidence to be sufficient to allow its demand for lost profits on its contract and tort claims to be presented to the jury.

### 3. Motion to exclude supplemental report

Clear Channel has moved to exclude a supplemental report submitted by JamSports' damages expert Siwek following his review of the report of Clear Channel's damages expert, Dr. Dennis Carlton. Clear Channel contends that Siwek's original report was premised on the assumption that there would have been no competition by Clear Channel had JamSports not been (allegedly) excluded from the supercross market, that JamSports must have belatedly realized the

10

problem created by this approach, and that Siwek sought to switch course under the guise of a rebuttal report. The Court denies the motion to strike the rebuttal report. As indicated earlier in this decision, Siwek's original report did not foreclose the possibility of competition. The Court has reviewed the rebuttal report in light of Clear Channel's arguments and finds that it is a proper rebuttal report. The Court will, however, permit Clear Channel to take a short deposition of Siwek on the rebuttal report if it wishes to do so, so that its counsel can prepare properly for trial. The parties are directed to attempt to agree on the length and timing of this deposition; if they cannot do so, the Court will set the parameters.

## Conclusion

For the reasons stated above, the Court denies the Clear Channel defendants' motion *in limine* to bar JamSports from presenting lost-profits claims [docket # 203-1 & 2, 205-1 & 2, 206-1 &2] and defendant Paradama Productions, Inc.'s motion *in limine* to exclude evidence of lost profits [# 207-1]. The Court also denies Clear Channel's motion to preclude JamSports from filing a new expert report [# 228-1]. Finally, the Court denies JamSports' motion to strike Clear Channel's reply brief [# 234-1].

MATTHEW F. KENNELLY
United States District Judge

Date: November 22, 2004