# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2298 | **DATE** | 1/3/2005 |
| **CASE TITLE** | Jamsports vs. Paradama | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the motion of certain non-parties to quash subpoenas (187-1) is terminated. Defendant's motion to quash subpoenas or for protective order (230-1 & 2) is granted. Plaintiff's motion in limine (235-1 through 235-14) and defendants' motion in limine (245-1) are granted in part and denied in part. Defendant's motion to clarify the final pretrial order has been ruled on and is therefore terminated (258). Trial set to 2/7/05 at 9:45 a.m. Pretrial conference set to 1/20/05 at 10:00 a.m. Telephone status hearing set to 1/10/05 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | JAN 0 4 2005 | | |
| ✓ | Docketing to mail notices. | date docketed | | 270 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| **OR** | courtroom deputy's initials | U.S. DISTRICT COURT | | |
| | | 2005 JAN -3 PH 4:23 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMSPORTS AND ENTERTAINMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 02 C 2298 |
| | ) | |
| PARADAMA PRODUCTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

JAN 0 4 2005

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this Memorandum Opinion, the Court rules on the parties' motions *in limine* and various other pretrial matters.

### A.    Clear Channel's motion to quash trial subpoena to Randall Mays

Clear Channel has moved to quash a trial subpoena served by JamSports on Clear Channel's executive vice president and chief financial officer Randall Mays, who lives and works in Texas.[1]  Rule 45(b)(2) provides where a trial subpoena may be served:

> Subject to the provisions of clause (ii) of subparagraph (c)(3)(A) of this rule, a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the ... trial ... or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the ... trial ....

Fed. R. Civ. P. 45(b)(2).  Mays was not served within this district, the 100-mile "bulge," or the state of Illinois.

---

[1] JamSports took Mays' deposition on video during the course of discovery.



JamSports opposes the motion to quash, relying on Rule 45(c)(3)(A), which is cross referenced in Rule 45(b)(2). Rule 45(c)(3)(A) provides that

> [o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
>
> ...
>
> (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person....

Fed. R. Civ. P. 45(c)(3)(A)(ii). According to JamSports, the cross-referencing of this provision in Rule 45(b)(2) expands the geographic reach of a court's subpoena power with regard to a person who *is* "a party or an officer of a party." It relies on decisions by several courts that have so held. *See, e.g., Ferrell v. IBP, Inc.*, No. C98-4047, 2000 WL 34032907 (N.D. Iowa Apr. 28, 2000); *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 587 (D. Minn. 1999); *Stone v. Morton Int'l, Inc.*, 170 F.R.D. 498, 500-01 (D. Utah. 1997).

The Court disagrees. Nothing in the history of the adoption of Rule 45(c)(3)(A) suggests that it was intended to alter the longstanding geographic limitations on the reach of a district court's subpoena power. Nor does the text of the Rule support the reading proposed by JamSports or in the cases upon which it relies. Rule 45(c)(3)(A) does not confer authority for service of a subpoena; it confers authority to quash or modify a subpoena. It provides an exception to Rule 45(b)(2), not an addition to that Rule. *See Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388, 396-97 (N.D. Iowa 1998).

Read in context, the cross-reference of Rule 45(c)(3)(A)(ii) in Rule 45(b)(2) is meant to reflect that even if service of a subpoena is otherwise proper under Rule 45(b)(2), the subpoena is

to be quashed if it imposes a requirement identified in Rule 45(c)(3)(A)(ii). Specifically, even if a subpoena is *served* within the geographic boundaries of a district, outside the district but within 100 miles of the place of trial, or outside the state in which the district lies, it must be quashed if it requires a non-party witness to *travel* more than 100 miles from where he or she resides, employs, or regularly transacts business. To provide a concrete example, a witness who lives and works in Galena, Illinois can properly be served with a subpoena under Rule 45(b)(2) to appear at a trial in Chicago, because Galena is within the Northern District of Illinois. But if the witness is not a party or officer of a party, she is entitled under Rule 45(c)(3)(A)(ii) to have the subpoena quashed, because it would require her to travel more than 100 miles.

For these reasons, the Court grants Clear Channel's motion to quash and for a protective order with respect to JamSports' trial subpoena addressed to Randall Mays.

## B.      Treatment of "highly confidential" documents

Early in discovery, upon Clear Channel's request and with the concurrence of JamSports and AMA Pro, the Court entered a protective order which, among other things, permitted parties to designate documents containing certain types of proprietary information as "highly confidential" and thereby limit access to outside counsel and retained experts. The records in question include business plans and projections, breakdowns of expenses and revenues, and an agreement with an entity called Dorna Off Road, S.L. Clear Channel argued, in support of the request for a protective order, that disclosing this information to its potential competitors (JamSports) and companies with whom it negotiates business deals (AMA Pro) would cause Clear Channel competitive harm. The Court has asked the parties to address how such documents should be treated at trial.

Clear Channel has listed twenty or so documents designated as highly confidential that have been listed as exhibits by JamSports. Clear Channel requests that these documents not be admitted as trial exhibits or, if admitted, that they be placed under seal and not made part of the public record, and that the restrictions on dissemination remain intact, in other words, that there be no dissemination to party representatives other than outside counsel and experts. Clear Channel also requests entry of an order barring the parties and counsel from disseminating any highly confidential information that may be revealed during the trial. However, Clear Channel does not seek to exclude anyone from the courtroom during trial. *See* Clear Channel Reply Mem. Regarding Use of "Highly Confidential" Documents at 6. JamSports opposes any restrictions at trial and asks that its outside counsel now be permitted to disclose the contents of the highly confidential documents to the client. AMA Pro also seeks permission for its outside counsel to review the documents with the client.

The public has a right of access to trials as well as to judicial records and documents, which prevails over any countervailing interests absent a showing of good cause for sealing the record in a particular case in whole or in part. *See, e.g., Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir. 1999); *Smith v. United States District Court,* 956 F.2d 647, 649-50 (7th Cir. 1992). Good cause may be established by showing that particular information amounts to a trade secret such that disclosure would put the holder at a competitive disadvantage if made public. *See, e.g., In re Adobe Systems, Inc. Securities Litig.,* 141 F.R.D. 155, 158, 161 (N.D. Cal. 1992); *see also, e.g., Baxter Int'l, Inc. v. Abbott Laboratories,* 297 F.3d 544, 545 (7th Cir. 2002) (legitimate trade secret may be kept out of public record); *Union Oil Co. of California v. Leavell,* 220 F.3d 562, 567 (7th Cir. 2000) (same).

4

In support of its request for ongoing restrictions at trial, Clear Channel has submitted the affidavit of its president, Charles Mancuso, that it submitted in support of its request for protective order in March 2003. As an initial matter, Mancuso's affidavit does not provide a basis for ongoing highly confidential treatment of the agreement with Dorna (JX 613 & 666). The highly confidential designation for this document is removed; it is to be treated as a "confidential" document under the protective order.

Nearly all of the remaining documents at issue are budgeting and revenue records which break down projected and actual revenues and expenses by event and by item. Mancuso Aff. ¶¶ 4-8. Mancuso states that access to these documents is highly restricted within Clear Channel itself to a handful of executive and that the information they contain is highly proprietary and not publicly available. *Id.* ¶¶ 9-14, 16. He states that disclosure of these records to a potential competitor like JamSports would enable use of the information to undercut Clear Channel with companies with which it does business by disclosing, for example, what Clear Channel pays for various services. It would also permit a competitor to learn which venues and events are less profitable and thereby plan events around such locations and events. Disclosure of Clear Channel's financial data to AMA Pro, Mancuso states, would allow AMA Pro to have access to information that it could use to its advantage and Clear Channel's disadvantage in future negotiations between the two companies over sanctioning fees. *Id.* ¶¶ 17-23.

The other documents are strategic plans, which Mancuso says likewise are highly restricted within Clear Channel. Disclosure of such documents, Mancuso contends, would give potential competitors insights that would allow undercutting or replication of the company's plans. *Id.* ¶ 26.

JamSports contends that Mancuso's affidavit is stale and does not support ongoing restrictions. The Court finds the affidavit sufficient to establish the need for confidentiality of the current and relatively current information Mancuso describes as well as a significant possibility of a serious and clearly defined injury to Clear Channel if that information were disclosed. But JamSports has a point with regard to older information. The records designated as highly confidential include information as far back as 1997. It is difficult to see, and Mancuso's affidavit is insufficient to establish, how reduction to ordinary "confidential" status of older information – at a minimum, information for years predating the filing of the lawsuit in 2002 – would cause harm to Clear Channel. Without such a showing, the Court is not persuaded that information concerning those years can properly be designated highly confidential and kept out of the public record.

With regard to information as to which a showing of good cause has been made, the Court believes that the appropriate mechanism for accommodating Clear Channel's interests, the public's right of access, and the needs of the other parties is as follows:

1) The Court will not enter a blanket order precluding any party from offering the identified highly confidential exhibits in evidence. However, the party offering any such exhibit will be required to explain the relevance and probative value of the particular document and why it needs the document admitted in evidence – as opposed to, for example, simply allowing an expert to rely on the document without having it admitting it in evidence. *See* Fed. R. Civ. P. 703 (allowing expert to rely on data not admitted at trial).

2) Any highly confidential document that is admitted in evidence will, of course,

be available to the jury, and no one will be excluded from the courtroom during use or discussion of the document. However, any such document will be admitted under seal and will not become part of the public record. Counsel and any officer, director, employee, agent, or attorney of a party who is present in the courtroom are barred from disclosing the document or its contents.

3) The Court obviously understands that all else being equal, it is important for trial counsel to be able to discuss the evidence with client representatives. But neither JamSports nor AMA Pro has made any effort to provide the Court with any particularized explanation of why they need to be able to discuss with their clients the contents of the remaining highly confidential documents. Absent such an explanation, there is no basis to remove that particular restriction as to documents that retain the highly confidential designation.

## C.     Use of videotaped deposition testimony by JamSports

Clear Channel objects to JamSports' use in its case in chief of the videotaped depositions of Richard Gray and P.J. Harvey, who are members of the board of directors of defendant AMA Pro. It says these witnesses are available to testify live and argues that JamSports should be required to call them in its case, using the depositions only where inconsistent with their live testimony.

The Court rejects this argument. Under Federal Rule of Civil Procedure 32(a)(2), a party may use in evidence for any purpose the deposition of an officer, director, or managing agent of an opposing party. By virtue of this Rule, JamSports is not required to call the witnesses "live" in its case and use the depositions merely for impeachment purposes.

On the other hand, Rule 32(a)(2) does not abrogate the Court's authority to regulate the mode and order of interrogating witnesses, *see* Fed. R. Evid. 611(a), or its authority to exclude evidence whose probative value is outweighed by, among other things, its needlessly cumulative nature, *see* Fed. R. Evid. 403. The Court can and will exercise this authority. If JamSports elects to proceed in its case by using deposition excerpts rather than by calling witnesses live, it will be required to provide, in advance of trial, a designation of the testimony to be offered, and an accurate statement of how long each videotaped presentation will take. The Court will carefully examine the designated testimony for cumulativeness. In addition, if JamSports presents the testimony of such a witness by deposition in its case in chief, and the witness is later called by the defense, JamSports cannot expect that it will be able to reprise its use of the same deposition excerpts a second time for "impeachment" purposes. All things considered, JamSports might be better advised to call the witnesses in its case in chief and use the deposition testimony as admissions and as otherwise appropriate during its examination.[2]

## D.     JamSports' renewed motion for sanctions and other relief

The Court initially believed that all lingering issues from in JamSports' renewed motion for sanctions and other relief, which focused on Clear Channel's belated disclosure that it had received from Ticketmaster rebates from supercross event admission tickets sold through that entity, have now been resolved. JamSports' status memorandum, however, suggests this may not be the case. *See* Pl. Mem. Regarding Status of Case at 6-7. JamSports is directed to file, on or

---

[2] The Court strongly urges JamSports to carefully think through its strategy. In the Court's experience, the use of a deposition, even a videotaped deposition, tends to take a good deal of the "punch" out of the presentation of evidence, even with regard to an adverse witness, and risks boring the jury.

before January 6, 2005, a memorandum of no more than three pages identifying with specificity what information it claims has not yet been produced that was encompassed in this motion. Clear Channel is directed to respond to any such claims in a memorandum of no more than three pages, to be filed on or before January 11, 2005.

### E.    JamSports' motion for protective order (third party subpoenas)

Three entities related to JamSports – Jam Productions, East End Management, and Pacific Management Services – previously moved to quash subpoenas *duces tecum* served by Clear Channel seeking, among other things, financial information. The subpoenas were premised on the belief that JamSports had relied on the financial wherewithal of those entities to support its entry into the supercross market. But JamSports principal Jerry Mickelson "testified that, in fact, JamSports was not relying upon the financial wherewithal of Jam Productions, East End Management and Pacific Management Services to financially support the JamSports/AMA Supercross series program." Pl. Mem. Regarding Status of Case at 3. Both sides agree that the motion to quash may be terminated as moot.

### F.    JamSports' motions *in limine*

#### 1 & 2.  Evidence regarding approval by AMA Pro's parent

JamSports sued AMA Pro for breach of contract, asserting two distinct theories of liability. First, JamSports claimed that their November 2001 letter of intent was a binding agreement entitling JamSports to promote AMA Pro's supercross series. The Court granted summary judgment in favor of AMA Pro on that claim, as the letter of intent contemplated a separate promotion agreement which was never concluded.

Second, JamSports claimed that AMA Pro had breached various provisions of the letter

of intent that the Court determined were binding. The letter of intent contained a provision that required AMA Pro to negotiate "exclusively and in good faith" with JamSports for a specified period, prohibited AMA Pro from entering into discussions with third parties, and required the parties to advise each other of offers received. The Court held that JamSports had established as a matter of law that AMA Pro had violated the requirement to advise JamSports of offers it had received from others, but left for jury determination what, if any, damages to award.

The Court denied JamSports' motion for summary judgment on its claim for breach of the good faith provision. JamSports' primary contention was that AMA Pro's insistence that the final deal be approved by its parent entity, the AMA, constituted bad faith in that this was a new condition not contemplated in the letter of intent. The Court found there was a genuine issue regarding whether AMA Pro's actions amounted to bad faith. *JamSports and Entertainment, LLC v. Paradama Productions, Inc.,* 336 F. Supp. 2d 824, 848 (N.D. Ill. 2004). The Court ruled that AMA Pro was precluded by the parol evidence rule from arguing that this was understood by both sides at the time of the letter of intent but reserved for later determination whether AMA Pro could rely on evidence regarding earlier discussions and understandings to show its lack of bad faith. *Id.* at 848-49.

JamSports has now moved *in limine* to exclude all evidence of understandings and discussions about approval by AMA and to bar argument that AMA approval was a condition of any final agreement. The Court agrees with JamSports that AMA Pro cannot contend that approval by AMA was a condition of a final agreement; the Court rejected that argument in the summary judgment ruling. *Id.* at 848. But the Court believes that evidence the parties had discussed the need for AMA Pro to obtain approval by its parent is relevant to show whether

10

AMA Pro engaged in "deliberate misconduct." *See Venture Assocs. Corp. v. Zenith Data Systems Corp.,* 96 F.3d 275, 279 (7th Cir. 1996).

JamSports has also moved to bar, as irrelevant, evidence that AMA Pro sought approval by its parent. As just described, this evidence is relevant and admissible on the issue of whether AMA Pro's conduct amounted to bad faith.

### 3. Evidence that facilities were not "essential"

The Court denies JamSports' request to prevent Clear Channel's expert, Dennis Carlton, from testifying that the facilities from which Clear Channel allegedly excluded JamSports were not essential and could not have harmed competition, due to the existence of viable alternative venues. Though JamSports' antitrust claims premised on the "essential facilities" doctrine are no longer part of the case, Carlton's testimony is relevant on the remaining antitrust claim, as to the issue of anticompetitive effect.

### 4. Carlton expert testimony on liability

The Court has previously denied, in a separate order, JamSports' motion to bar Clear Channel's antitrust liability expert Dennis Carlton from testifying. *See* Order of Nov. 22, 2004. However, Clear Channel's request to bar certain testimony by JamSports' liability expert Robert Baade has led the Court to revisit the matter of Carlton's testimony. The parties should consult Section G.2 of this Opinion for further discussion of the point.

### 5. Affidavits of venue managers

Clear Channel obtained affidavits from stadium managers explaining their relationships with Clear Channel and why JamSports did not obtain access to their venues for its proposed supercross tour. There is no question that these affidavits are hearsay; Clear Channel does not

contend otherwise. But it argues that its expert Carlton should be able to rely on these statements whether or not the witnesses testify at trial. JamSports disagrees and seeks to bar any reference to the statements.

Under Federal Rule of Evidence 703, facts or data upon which an expert relies need not be admissible if they are "of a type reasonably relied upon by experts in the particular field informing opinions or inferences upon the subject." Fed. R. Evid. 703. JamSports has directly challenged Carlton's reliance on the venue affidavits, arguing that he "should not be permitted to rely on hearsay information not of the type commonly relied upon by experts on the field of economics." JamSports Mots. In Limine at 6. Despite this frontal attack, Clear Channel has provided no basis for a claim that persons in Carlton's field reasonably rely upon otherwise inadmissible hearsay statements of this type whose veracity has not been subjected to testing via cross examination or otherwise. *See* Clear Channel Resp. to JamSports Mots. In Limine at 5-6.[3] As the proponent of Carlton's testimony, Clear Channel bears the burden of showing its admissibility. *See, e.g., United States v. Hicks,* 389 F.3d 514, 525 (5th Cir. 2004); *United States v. Frazier,* 387 F.3d 1244, 1246 (11th Cir. 2004). Because it has failed to carry that burden, Carlton may not base his opinions on the out-of-court statements of the venue managers.

6.      **Statements by OEM representatives, industry representatives, and others**

JamSports also attacks Carlton's reliance on hearsay statements by representatives of original equipment manufacturers and others in the supercross business. In response, Clear

---

[3] Clear Channel suggests in passing that the venue managers are "impartial," but that is not necessarily so: they, or at least some of them, have had ongoing business relationships with Clear Channel. But in any event, a claim of impartiality does not substitute for Rule 703's requirement that inadmissible data be of the type reasonably relied upon by experts in the particular field.

Channel incorporates its arguments regarding Carlton's use of the out-of-court statements of the venue managers. The Court's ruling is the same as in the previous section.

7.  **"Social contacts" between Mickelson and Becker**

Clear Channel does not dispute JamSports' argument that testimony about various contacts between Jerry Mickelson, the principal of JamSports, and Brian Becker, an officer of Clear Channel, at which they discussed trying to resolve the lawsuit should be excluded pursuant to Federal Rule of Evidence 408.

8.  **JamSports' efforts to enter the supercross market**

The Court denies JamSports' request to bar Clear Channel from offering evidence that JamSports made no further efforts to enter the supercross market after AMA Pro declined to enter into a final promotion agreement. This is not a matter of an unalleged affirmative defense of failure to mitigate damages, as JamSports contends. Rather, the evidence is, as Clear Channel argues, probative on the question of antitrust injury with regard to what the Court has previously referred to as JamSports' "non-*Fishman* theory" of antitrust liability. Clear Channel's theory is that JamSports was simply trying to get the AMA Pro contract and step into Clear Channel's shoes, not to compete with Clear Channel in the marketplace. Clear Channel is entitled to introduce evidence that supports its theory.

9.  **Clear Channel's "right to promote supercross"**

JamSports asks the Court to bar evidence regarding the long history of Clear Channel and its predecessors in promoting supercross events. JamSports is correct that Clear Channel cannot use the existence of its monopoly of the alleged market to argue that a monopoly is the appropriate way for that market to be structured. But Clear Channel is entitled to present

13

evidence of its skill and experience in order to show, among other things, that it got the AMA Pro contract by merit, not tortious interference with JamSports' deal.

## 10. Redacted documents

Clear Channel says that it has no intention of introducing any redacted documents at trial, so JamSports' request to preclude it from doing so is moot.

## 11. Expert testimony about "free riding"

The Court denies JamSports' motion to preclude Clear Channel from offering expert testimony and other evidence tending to justify its efforts to obtain from various venues agreements (called "clearances") precluding other similar events in those venues for periods before and after Clear Channel's supercross events. JamSports contends that the opinion of Clear Channel's expert that clearances were legitimate business conduct that was not anticompetitive is unsupported by any evidence. The Court agrees in part and disagrees in part. As discussed later in this Opinion, neither party's expert may properly testify regarding the motivations of the venue managers. But Carlton's testimony that clearances may be justified on legitimate business grounds is proper, for the reasons cited in Clear Channel's response to JamSports' motion. *See* Clear Channel Resp. to JamSports Mots. In Limine at 12-14. The appropriate way for JamSports to attack Carlton's opinion on that point is through cross examination and presentation of contrary evidence.

## 12. Evidence of Clear Channel's general and administrative costs

During discovery, JamSports asked Clear Channel to identify its general and administrative expenses applicable to supercross, for purposes of analysis and use by JamSports' damages expert Stephen Siwek. In response, Clear Channel represented that this was not an

14

allocation that it made in the normal course of this business; for purposes of the discovery request, it provided an allocation based on the proportion of its revenues derived from supercross, which amounted to about twenty percent. JamSports maintains that internal Clear Channel records, not prepared for litigation purposes, suggest that this vastly overstates the proportion of general and administrative expenses attributable to supercross.

JamSports wants the Court to bar Clear Channel from using the for-litigation figures for any purpose at trial. The Court denies this request. Clear Channel may present and argue its allocation at trial; this is a factual dispute appropriately evaluated by the jury. JamSports, of course, likewise will be permitted to offer and use in cross-examination its own methodology for how such costs are properly allocated, including the Clear Channel records that it claims undercut Clear Channel's "stand-alone" figures.

### 13.    JamSports' supercross expense projections

As noted in the previous section, Clear Channel claims that it does not routinely allocate its general and administrative expenses or overhead to particular lines of business such as supercross. JamSports argues that as a result, Clear Channel and its expert should be prevented from arguing that any particular figures in the general and administrative projection developed by JamSports' expert Siwek for purposes of determining lost profits are less than the expenses Clear Channel incurred and thus are artificially low. The Court agrees with Clear Channel that it would be improper to bar an attack on Siwek's figures. If it is true that Clear Channel's own records do not break down such expenses specifically for supercross, then presumably no one – including Clear Channel's expert or its lawyers – will have had access to, or will be able to use at trial, internally-used Clear Channel figures that might tend to reflect that particular elements of

15

Siwek's analysis are wrong. If it appears otherwise at trial, the Court assumes JamSports will promptly raise the issue with the Court.

### 14. Ticketmaster rebate revenue

JamSports asks the Court to bar Clear Channel from cross-examining JamSports' damages expert, Stephen Siwek, regarding the fact that his damage analysis does not include ticket rebate revenue that Clear Channel received from Ticketmaster. Clear Channel, which belatedly produced documentation regarding the Ticketmaster revenue, has affirmed it will not refer to the fact that Siwek's initial analysis did not include that revenue. *See* Clear Channel Resp. to JamSports Mots. In Limine at 17. The Court will not preclude Clear Channel, however, from cross-examining Siwek regarding the accuracy of the figures in his analysis for the Ticketmaster rebate revenue.[4]

### G. Clear Channel's motions *in limine*

### 1. Evidence "inconsistent with the Court's ruling on essentiality"

The Court granted summary judgment in Clear Channel's favor on several antitrust claims that were premised on the so-called essential facilities doctrine, on the ground that JamSports had no evidence from which a jury reasonably could conclude that it was excluded from "essential" facilities as that term is defined in antitrust law. *JamSports and Entertainment,* 336 F. Supp. 2d at 839. Now Clear Channel seems to say that Count 15, JamSports' remaining

---

[4] JamSports says that even after the original non-production of the Ticketmaster rebate records became known, Clear Channel still refused to produce complete records in this regard. It argues that it would be unfair for Clear Channel to imply in questioning Siwek or in argument that Siwek's analysis cannot be believed because he is unaware of how the revenues are calculated. Ruling on this point will have to await the Court's final determination of JamSports' renewed motion for sanctions and other relief, *see supra* at 8-9, which involves the disclosure of the Ticketmaster information.

antitrust claim, also depends on this theory. *See* Clear Channel Consol. Mots. In Limine at 2.

But that is not what Clear Channel said in its summary judgment motion; then it said that "[f]our

of Jam's five remaining antitrust claims – Counts 5, 6, 8 and 12 – arise under the 'essential

facilities' doctrine." Mem. in Support of Clear Channel Defs' Mot. for Summ. Judg. at 8

(footnote omitted). Much later, in discussing Count 15, Clear Channel made an in-passing

reference to the point, saying, without elaboration or support, that JamSports' "complain[t] that

Clear Channel strong-armed the stadiums into refusing access ... [is] a repeat of the essential-

facilities claim, and must be rejected for the same reasons." *Id.* at 30. But that was not sufficient

to advance the argument as a basis for summary judgment,[5] and thus to the extent Clear Channel

is trying to press such an argument now, it comes too late in the day for summary judgment

purposes. The Court agrees with JamSports that the evidence regarding Clear Channel's

allegedly exclusionary behavior with regard to stadium venues is relevant to JamSports'

monopolization claim in Count 15; in effect the Court held just that in denying summary

judgment on this claim. *See JamSports and Entertainment,* 336 F. Supp. 2d at 843-45. There is,

accordingly, no basis to preclude JamSports from offering evidence concerning that behavior –

even if the stadiums were not "essential" within the meaning of the essential facilities doctrine.

### 2. Issues regarding testimony of plaintiff's liability expert

Clear Channel asks the Court to address several issues in its previously-filed motion to

---

[5] The Court also notes that our ruling made it clear we perceived Clear Channel's arguments about the deficiencies in JamSports' essential facilities claims to address only the claims other than Count 15. *See JamSports and Entertainment,* 336 F. Supp. 2d at 837 ("Counts 5, 6 and 12 ... are based on the essential facilities doctrine"). Clear Channel did not seek reconsideration on the ground that the Court had overlooked application of these same arguments to Count 15.

exclude the testimony of JamSports' liability expert, Robert Baade, that the Court was not required to address in dealing with Clear Channel's motion for summary judgment.

First, because the Court has granted summary judgment in Clear Channel's favor on JamSports' antitrust claims that were premised on the essential facilities doctrine, Clear Channel's request to bar Baade's testimony concerning the "essentiality" of facilities is moot.

Second, there is no basis to bar Baade from testifying regarding the significance of the facilities that Clear Channel allegedly sought to make unavailable to JamSports. First, the Court does not regard this as an attempt to circumvent the Court's ruling dismissing JamSports' essential facilities claims. Second, although Baade's report focuses primarily on the issue of "essentiality," his opinions regarding the significance of various facilities, which were explored at length during his deposition, are fairly encompassed within that discussion and thus are not subject to exclusion on the ground they were undisclosed. Third, Clear Channel's contention that Baade's reasoning was circular is a matter to be explored by cross-examination and presentation of contrary evidence; it is not a basis for excluding the testimony. The Court has reviewed Baade's report and finds that it adequately explains, based on application of his expertise, the rationale for his conclusions in this regard.

Clear Channel also attacks Baade's methodology for determining that certain conduct was anticompetitive. In this regard, the Court largely agrees with Clear Channel. The Court has carefully reviewed Baade's report submitted pursuant to Rule 26(a)(2), as well as the excerpts cited by the parties from his two-day deposition. Baade's discussion of the question of anticompetitive conduct consists, in large part, of his interpretation of correspondence and other evidence. *See* Baade Report at 46-52. JamSports has failed to persuade the Court that this is

proper testimony by an expert in economics. There is nothing in Baade's expertise that suggests that he is any more competent than the average juror in interpreting these communications or in divining from them the intent of Clear Channel and others. Such insights, as Judge Easterbrook noted in a similar context, "are no part of the economist's armamentarium." *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir. 1989). In conducting this analysis, Baade has simply "examined materials produced in discovery and [drawn] inferences from the record." *Id.* Such testimony, in this context at least, does not constitute the application of "scientific, technical, or other specialized knowledge [that] will assist the trier of fact." Fed. R. Evid. 702. *See also, City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 565, 567 n.27 (11th Cir. 1998) (barring testimony of economist that amounted to "characterization of documentary evidence as reflective of collusion" and "characterization[s] of particular bids as 'signals'" on the grounds that "the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance").

Interspersed among Baade's inferences from the documentary evidence on the issue of anticompetitive conduct, one finds statements that, at least on their face, appear to have a grounding in economics and a relationship to Baade's expertise. For example, Baade finds that Clear Channel's alleged exclusionary behavior with regard to stadium venues "lessened competition to the detriment of consumers" and others, Baade Report at 52, and that its conduct with regard to the Dorna contract "impairs the well being of consumers" and others, *id.* at 54. His analysis of the economic implications of Clear Channel's proposals to original equipment manufacturers likewise appears to properly apply his expertise in a manner helpful to the finder of fact. *Id.* at 55. And there are likely other points under the heading of anticompetitive conduct

19

to which Baade properly can testify. Sorting of the admissible from the inadmissible will require further discussion.

The Court also notes that Clear Channel's attack on Baade's testimony in this regard is not altogether different from an earlier attack by JamSports on testimony by Clear Channel's expert, Dennis Carlton, which the Court previously rejected. Having now re-reviewed Carlton's report in light of our rulings regarding Baade, the Court notes that that report, like Baade's, incorporates findings that consist of little more than the interpretation of written or verbal statements by others. *See, e.g.,* Carlton Liability Report ¶¶ 69, 78-80. Such "findings," like those of Baade discussed above, are not an appropriate subject for expert testimony. Carlton, like Baade, will be barred from rendering opinions that amount to simply interpreting the evidence and drawing inferences regarding the motivation of Clear Channel or others.

3.     **Argument regarding lack of justification for "clearances"**

Clear Channel wants the Court to bar JamSports from arguing that there was no legitimate business reason for Clear Channel's alleged practice of insisting that venues provide spacing or "clearance" periods between similar events, as a JamSports representative who appeared for a Rule 30(b)(6) deposition said the practice could be justified. The Court agrees with JamSports that the relevant issue for purposes of antitrust liability is whether Clear Channel actually engaged in the challenged conduct for legitimate reasons, not whether, after the fact, the conduct can, in hindsight, be rationalized in some way. *See, e.g., Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 608 (1985); *Lavage's Inc. v. 3M,* 324 F.3d 141, 163-64 (3d Cir. 2003) *(en banc).* The testimony by JamSports' representative is not a basis to preclude JamSports from attacking the motivation for Clear Channel's conduct. Clear Channel's request

is denied.

### 4. "Changed testimony" regarding the relevant market

Clear Channel argues that because one or more JamSports representatives testified that what the company was interested in obtaining was the AMA Pro supercross contract that Clear Channel previously had, JamSports should be precluded from arguing that the relevant market is supercross generally. The motion is denied. As JamSports notes in its response, it is not at all clear that there is any inconsistency. That aside, the appropriate way for Clear Channel to deal with any apparent contradictions is to draw attention to them in cross examination and closing argument. There is no proper basis to confine JamSports to a particular relevant market based on the referenced deposition testimony.

### 5. "Contradiction" between relevant market and preparedness to enter market

To establish its antitrust claim, JamSports must, among other things, define the relevant market, and must, because its claim is one of market exclusion, show that it was prepared to enter that market. Clear Channel says that JamSports appears to rely on its experience in promoting music concerts as part of its showing of preparedness. It contends that this is inconsistent with JamSports' contention that the relevant market is the market for promoting supercross and thus seeks to preclude JamSports from arguing that is the relevant market. This is not a proper basis for limiting JamSports' legal theory at trial. If there is an inconsistency (the Court does not see that any necessarily exists), the way for Clear Channel to deal with it is by drawing attention to it in cross examination, if appropriate, and in closing argument.

### 6. Evidence of Clear Channel's profits

Clear Channel asks the Court to prevent JamSports from arguing that Clear Channel's

21

profit level tends to show that it had monopoly power. Clear Channel's profits are admissible, if for no other reason, on the issue of damages and thus will be part of the evidence admitted at trial. The appropriate inferences to be drawn from the evidence should be addressed in a Rule 50 motion (if appropriate) and /or prior to closing argument. Clear Channel also says the Court should "preclude Jam[Sports] from presenting evidence" that Clear Channel's profits show it had monopoly power, *see* Clear Channel Consol. Mots. In Limine at 10; *see also id.* at 11, but because it identifies no particular evidence, the request is denied.

### 7 - 11. Contentions that certain conduct by Clear Channel was "anticompetitive"

In sections seven through eleven of its motion *in limine*, Clear Channel argues that JamSports should be barred from characterizing certain evidence – Clear Channel's press releases, its dealings with original equipment manufacturers, the Fédération Internationale de Motocyclisme and Dorna, and Speed Channel, and its use of leverage derived from other markets – in certain ways. Clear Channel has not asked the Court to bar any of this evidence; it asks to preclude only JamSports' "contentions" regarding the evidence.

These are not proper motions *in limine*.[6] It remains to be seen what characterizations reasonably and properly can be made of the evidence that will be admitted at trial. The jury will be advised that the lawyers' opening statements are not evidence and can, like other juries, be

---

[6] In addressing the parties' summary judgment motions, the Court was not required to address the legitimacy of the particular business tactics of Clear Channel that are the subject of these *in limine* requests. The Court stated in a footnote that if Clear Channel "wishes to seek an order excluding [these] matters at trial," it should do so by way of a motion *in limine*. *JamSports and Entertainment,* 336 F. Supp. 2d at 845 n. 9. What the Court was inviting was a motion to exclude evidence if proper grounds existed. But Clear Channel has not moved to exclude the evidence in question. Rather, as noted in the text, it seeks only to prevent certain characterizations of the evidence.

expected to abide by this instruction. It will be more appropriate to address the propriety of any particular characterization of the evidence by way of a motion pursuant to Federal Rule of Civil Procedure 50 or a motion *in limine* prior to closing arguments. Clear Channel's requests to preempt JamSports' characterization of this evidence are denied.

### 12. Actions not directed at AMA Pro - tortious interference claim

Clear Channel asks the Court to preclude JamSports from arguing that Clear Channel's actions directed at entities other than AMA Pro – i.e., actions directed at stadium venues constituted tortious interference with JamSports' contractual expectations with AMA Pro. The request is premature and is denied for that reason. The evidence regarding Clear Channel's contacts with the venues is relevant and admissible, if for no other reason, on JamSports' antitrust claim. It is more appropriate to address at a later time (either in the context of a Rule 50 motion or a motion *in limine* prior to closing argument) whether this evidence may be used to support JamSports' tortious interference claims.

### 13. Argument that Clear Channel could not contact AMA

Evidence of Clear Channel's contacts with AMA Pro's parent, the AMA, is plainly relevant to the claims of breach of contract and tortious interference. Clear Channel does not ask the Court to bar this evidence; it seeks only to preclude argument that Clear Channel was prohibited from contacting the AMA. As the Court reads Clear Channel's argument, it sounds more like a request for summary judgment than a motion *in limine*. *See* Clear Channel Consol. Mots. In Limine at 18-19 ("Absent proof that (a) such a restriction existed, and (b) that Clear Channel knew of it, such contacts cannot as a matter of law constitute tortious interference with AMA Pro's deal with Jam"). The request should be presented, assuming appropriate grounds

23

exist, as part of a Rule 50 motion. The motion *in limine* is denied.

## 14. Argument that Clear Channel's actions led to requirement of AMA approval

Clear Channel asks the Court to prevent JamSports from arguing that final approval of its promotion agreement by AMA was a condition imposed as a result of action by Clear Channel, on the grounds that "[t]here is absolutely no evidence whatsoever supporting that contention." Clear Channel Consol. Mots. In Limine at 19. Clear Channel does not seek to preclude any evidence; its request, like the one discussed in the preceding section, amounts to a renewed motion for summary judgment on the tortious interference claims, or, as Clear Channel itself describes it, a request for reconsideration of the Court's ruling denying summary judgment on those claims. *Id.* The motion is denied without prejudice to its presentation as a motion under Rule 50.

## 15. Investigations and other cases

Because JamSports has stated that it does not intend to offer evidence regarding a Department of Justice inquiry regarding the present matter or regarding other antitrust suits against Clear Channel, Clear Channel's request to bar this evidence is moot.

## 16. "Log" prepared by Jerry Mickelson

JamSports' principal Jerry Mickelson prepared a diary of his contacts with various stadiums and their managers between November 2001 and March 2002. This was after JamSports had already engaged antitrust counsel. The diary includes copies of written communications Mickelson sent to the venues, and also provides his versions of conversations he had with venue managers. Clear Channel argues that the diary should be excluded as hearsay.

24

JamSports does not dispute the proposition that the diary is hearsay[7] but argues that it is

admissible under one of two exceptions: as past recollection recorded under Rule 803(5), or as a

record of regularly conducted activity under Federal Rule of Evidence 803(6) – the so-called

"business record" exception. Rule 803(5) does not support admission of the diary. That Rule

does not permit introduction of the document itself; it states that "[i]f admitted, the memorandum

... may be read into evidence but may not itself be received as an exhibit unless offered by an

adverse party." Fed. R. Evid. 803(5). But that aside, Rule 803(5) does not authorize admission

of Mickelson's written version of his conversations with the venue managers; the oral out-of-

court statements are a separate level of hearsay which requires their own basis for admissibility.

*See, e.g., Bularz v. Prudential Ins. Co. of America*, 93 F.3d 372, 377-78 (7th Cir. 1996); Fed. R.

Evid. 805 (hearsay within hearsay is not excluded "if each part of the combined statements

conforms with an exception to the hearsay rule").

Rule 803(6) likewise does not authorize admission of Mickelson's diary. That Rule

requires a showing that the information contained in the record at issue was "'transmitted by' a

declarant 'with knowledge' in the ordinary course 'of a regularly conducted business activity'"

and thus encompasses only declarants "'who report to the recordkeeper as part of a regular

business routine in which they are participants.'" *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir.

1986) (quoting Fed. R. Evid. 803(6) and *Petrocelli v. Gallison*, 679 F.2d 286, 290 (1st Cir.

1982)). "The fact that statements made by strangers to the business become a part of its records

... does not make [those statements] business records unless they are verified by the business and

---

[7] It is conceivable that the e-mail communications that are incorporated into the diary
may be admissible on some basis. Our discussion focuses on the diary's rendition of
Mickelson's conversations with venue managers.

thus adopted and become the business's own statements," *United States v. Santos,* 201 F.3d 953, 963 (7th Cir. 2000), which is not the case here. *See also, e.g., United States v. Ismiola,* 100 F.3d 380, 392 (5th Cir. 1996). Moreover, the business record rule does not authorize the admission of documents prepared in anticipation of litigation, *United States v. Blackburn,* 992 F.2d 666, 670 (7th Cir. 1993), as the circumstances suggest was the case regarding Mickelson's diary.

It is conceivable, as JamSports notes, that one or more venue managers may testify inconsistently with Mickelson's recollection of their statements to him. If so, and the proper foundation is laid, Mickelson will be able to recount the prior inconsistent statements to impeach these witnesses, and if necessary the diary can be used to refresh his recollection. And if Mickelson's rendition of the venue managers' prior statements becomes otherwise admissible, the diary may at that point fall within Rule 803(5)'s hearsay exception for recorded recollections. Finally, as JamSports notes, it is possible to imagine circumstances under which portions of the diary may become admissible as prior consistent statements. *See* Fed. R. Evid. 801(d)(1)(B). But Mickelson's diary is otherwise not properly admissible under any exception to the hearsay rule.

**17. Argument that Clear Channel interfered with potential investors**

Clear Channel contends there will be no evidence supporting a claim that it interfered with or even communicated with any of JamSports' potential investors and asks the Court to preclude JamSports from making any such argument. The motion is unnecessary and is therefore denied. The Court believes it can safely assume that counsel will not make claims in opening statement that they have no basis to believe will be supported by the evidence; in any event, the jury will be instructed that counsel's statements are not evidence.

26

### 18. Reliance on financial wherewithal of various investors

Clear Channel requests that the Court bar JamSports from claiming that, to enter the supercross business, it was relying on the financial wherewithal of persons – specifically, certain principals of JamSports itself – whose financial information JamSports resisted producing in discovery. In response, JamSports says that "[t]he undisputed evidence at trial will show that JamSports *never had to rely upon its principals' financial assets* to support its business" due to commitments from others. JamSports Resp. to Clear Channel's Consol. Mots. In Limine at 23 (emphasis added). Clear Channel's motion thus appears to be moot.

### 19. Hearsay testimony regarding commitments from investors

Because JamSports has committed that it will not offer hearsay testimony from Mickelson regarding commitments he claims to have received from potential investors, JamSports Resp. to Clear Channel's Consol. Mots. In Limine at 24, Clear Channel's request to bar such testimony is moot.

### 20. JamSports Exhibit 65

Clear Channel moves to exclude JamSports Exhibit 65, a draft letter from Eric Cole, a Clear Channel representative, to a representative of Reliant Stadium. Clear Channel argues, and JamSports does not dispute, that the letter was never sent by Cole, and thus the letter is inadmissible in and of itself. If, as JamSports contends, it can show that the letter accurately summarizes a telephone conversation between Cole and the stadium representative that is otherwise admissible against Clear Channel under Rule 801(d), the part of the letter that constitutes such a summary might be admissible under, and in the manner provided by, Federal Rule of Evidence 803(5). Final determination will have to await the necessary foundation.

### 21. Sums allegedly spent trying to enter the supercross business

Clear Channel contends that a significant portion of the expenses JamSports claims it incurred in trying to enter into the supercross business were in fact expenses it incurred to pursue the present suit and are therefore inadmissible with regard to any matter to be determined by the jury. But JamSports contends that it can show these expenses had nothing to do with this lawsuit. Based on the sketchy information provided by the parties, there is no basis to preclude any particular evidence. But JamSports' reference in its response to "certain legal expenses incurred by JamSports which were incurred as a result of Clear Channel's anti-competitive conduct with supercross venues ... before AMA Pro Racing reneged," JamSports Resp. to Clear Channel's Consol. Mots. In Limine at 25, is ambiguous enough to require further consideration of that particular point before the evidence is offered at trial. The Court will leave it to the parties to raise the issue at some appropriate point during the trial.

### 22. JamSports Exhibit 584

Clear Channel moves to exclude JamSports Exhibit 584, an e-mail that Clear Channel claims is protected by the attorney-client privilege. Clear Channel has failed to make the necessary showing, as the e-mail does not appear to be a communication for the purpose of obtaining legal advice. In addition, Clear Channel allowed Eric Cole, the author of the e-mail, to be questioned about its contents without objection. *See* JamSports Resp. to Clear Channel Mots. In Limine at 26 (quoting deposition testimony). Thus if nothing else, the privilege has been waived. The Court also rejects Clear Channel's argument that the e-mail should be excluded under Federal Rule of Evidence 403; the e-mail is probative of Clear Channel's intent, and it has identified no *unfair* prejudice that would result from its admission.

28

### 23. JamSports Exhibits 11 and 152

Clear Channel seeks to exclude two documents that, according to JamSports, reflect plans or efforts by Clear Channel to leverage its power over venues to prevent them from giving access to competitors in areas other than supercross. Clear Channel argues that this is inadmissible "propensity" evidence. JamSports argues that the evidence is probative of motive, intent, and plan and is thus admissible under Federal Rule of Evidence 404(b). The Court needs to hear more argument before it can rule on this issue and thus defers determination of the point until the final pretrial conference or trial.

### Conclusion

For the reasons stated above, the motion of certain non-parties to quash subpoenas [187-1] is terminated. Defendant's motion to quash subpoena or for protective order [230-1 & 2] is granted. Defendant's objection to the use of videotaped testimony is overruled. Plaintiff's motion *in limine* [235-1 through 235-14] and defendants' motion *in limine* [245-1] are granted in part and denied in part as detailed above. Defendant's motion to clarify the final pretrial order [258-1] has been ruled upon and is therefore terminated. The case is held for trial on February 7, 2005 at 9:45 a.m. A continued pretrial conference is set for January 20, 2005 at 10:00 a.m. Telephone conference, to be initiated by the parties, is set for January 10, 2005 at 9:00 a.m. to discuss the agenda for January 20.

Date:  January 3, 2005

MATTHEW F. KENNELLY
United States District Judge

29