# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMSPORTS AND ENTERTAINMENT, LLC, )
)
        **Plaintiff,**         )
)
    **v.**                     )      **Case No. 02 C 2298**
)
PARADAMA PRODUCTIONS, INC., et al.  )
)
        **Defendants.**     )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case was tried to a jury on the claims of plaintiff JamSports and Entertainment, LLC against defendants Paradama Productions, Inc., d/b/a AMA Pro Racing; Clear Channel Entertainment, Inc., and various other Clear Channel entities (collectively, "Clear Channel"). The jury returned a verdict for JamSports against AMA Pro on JamSports' claim of breach of contract (Count 1), for JamSports against Clear Channel on JamSports' claims of tortious interference with contract (Count 3) and tortious interference with prospective advantage (Count 18), and for Clear Channel on JamSports' claim for violation of the Sherman Act (Count 15).[1] The jury assessed compensatory damages of $169,315.19 against AMA Pro on the breach of contract claim, compensatory damages of $17,144,573 against Clear Channel on the two tortious interference claims, and punitive damages of $73,000,000 against Clear Channel on those same

---

[1] JamSports' remaining claims had previously been dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), see *JamSports & Entertainment, LLC v. Paradama Productions, Inc.*, No. 02 C 2298, 2003 WL 1873563 (N.D. Ill. Apr. 15, 2003) ("*Jamsports I*"), or were disposed of on summary judgment.

claims.

JamSports has not sought a new trial on the antitrust claim. Clear Channel has moved for entry of judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or in the alternative for a new trial under Federal Rule of Civil Procedure 59(a). AMA Pro has moved to alter or amend the judgment against it pursuant to Federal Rule of Civil Procedure 59(e) but has not sought a new trial on the breach of contract claim. For the reasons stated below, the Court enters judgment as a matter of law in Clear Channel's favor on Count 18, the claim for tortious interference with prospective advantage, orders a new trial (at least as to damages) on Count 3, the claim for tortious interference with contract, and otherwise denies the defendants' motions.

### Discussion

Rule 50 of the Federal Rules of Civil Procedure provides that a court may grant a motion for judgment as a matter of law against a party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue ...." Fed. R. Civ. P. 50(a), incorporated in *id.* 50(b). A jury verdict may not be overturned under Rule 50 "so long as it rests on a reasonable basis in the record." *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 599 (7th Cir. 1998); *see also, e.g., Filipovich v. K & R Express Systems, Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). In considering a motion under Rule 50, the evidence must be viewed in the light most favorable to the party that prevailed, drawing all reasonable inferences in its favor. *See, e.g., Filipovich,* 391 F.3d at 863.

Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial to all or any of the parties on all or part of the issues if the jury's verdict was "against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." Fed.

R. Civ. P. 59(a); *see Shick v. Illinois Dept. of Human Services*, 307 F.3d 605, 611 (7th Cir. 2002).

## 1.    Claim of breach of contract (Count 1)

Count 1 was JamSports' claim against AMA Pro for breach of their November 2, 2001 letter of intent. Prior to trial, the Court ruled that the letter of intent was a binding contract obligating AMA Pro to negotiate exclusively and in good faith with JamSports toward a final supercross promotion agreement for a 90 day period, prohibited AMA Pro from entering into any discussion or negotiation with anyone else, barred the parties from divulging the letter of intent's terms, and required AMA Pro to advise JamSports promptly if it received another offer. *See JamSports and Entertainment, LLC v. Paradama Productions, Inc.*, 336 F. Supp. 2d 824, 846-47 (N.D. Ill. 2004) (*JamSports II*); Jury Instructions at 18. The Court ruled on summary judgment that AMA Pro had breached the last of these obligations. *JamSports II*, 336 F. Supp. at 847; *see* Jury Instructions at 18. JamSports also contended that AMA Pro had breached the letter of intent by divulging its terms to Clear Channel, discussing and negotiating with Clear Channel during the exclusivity period, and failing to negotiate with JamSports in good faith. *See* Jury Instructions at 18.

The jury found in JamSports' favor on this claim. The jury was instructed that in the event of a finding for JamSports, it was entitled to compensation "for any losses that you find were proximately caused by the particular breach or breaches of the November 2, 2001 letter of intent that you find AMA Pro committed." Jury Instructions at 35. The jury awarded $1.00 in lost profits and $169,314.19 in out of pocket expenses, for a total of $169,315.19. It is reasonably clear from the evidence that the amount awarded for out of pocket expenses was

3

composed of the expenses that JamSports incurred in trying to land the AMA Pro supercross promotion contract.

As noted earlier, on JamSports' claim against Clear Channel for tortious interference with this same contract, the jury awarded JamSports lost profits of $17,144,573. Relying on the jury's simultaneous award of lost profits and out of pocket expenses, AMA Pro seeks to amend the judgment to require JamSports to elect between these two remedies, arguing that otherwise JamSports would obtain a double recovery. AMA Pro has not moved for a new trial – presumably because it does not consider the verdicts inconsistent, as we will discuss later in this decision – and does not seek entry of judgment as a matter of law on the grounds of insufficiency of the evidence.

The Court rejects AMA Pro's argument. Based on the verdicts that were returned by the jury, AMA Pro's claim of double counting is without merit. As JamSports points out, the lost profits analysis performed by its damages expert, Stephen Siwek, did not account for the amounts that JamSports had already spent to try to get the supercross promotion contract. Rather, his determination of lost profits was based on the expenses that JamSports would have incurred in the future had it actually landed the supercross deal. Thus, contrary to AMA Pro's argument, there is no basis to believe that the two awards amounted to double counting.

Even if AMA Pro's request for an election of remedies had merit, however, it would be premature. In this decision, the Court grants Clear Channel's motion for judgment as a matter of law on one of the claims on which JamSports prevailed and directs a new trial, at least as to damages, on the other such claim. Thus at present there is no other remedy to "elect" other than the damages awarded against AMA Pro.

4

For these reasons, the Court denies AMA Pro's motion to alter or amend the judgment.

**2.      Claim of tortious interference with prospective advantage (Count 18)**

In Count 18, JamSports claimed that Clear Channel tortiously interfered with its prospect of concluding a promotion agreement with AMA Pro. The jury was told that on this claim, JamSports had to establish five elements: (1) JamSports reasonably expected to enter into a business relationship with AMA Pro, (2) Clear Channel knew this and (3) interfered intentionally and unjustifiably, (4) causing a termination of JamSports' expectation, and (5) causing damage to JamSports. If JamSports established these elements, the jury was advised, it had to consider whether Clear Channel's actions constituted competing with JamSports for prospective business. The Court's instructions stated that "[a] firm is entitled to compete for prospective business, so long as it acts with the intention, at least in part, of furthering its own business, and is not motivated by spite or ill will." Jury Instructions at 30. If Clear Channel proved this, then the jury was to consider whether JamSports proved that Clear Channel had used wrongful means, which the Court defined as a violation of the antitrust laws. If so, the jury was to find for JamSports; if not, the jury was to find for Clear Channel. *Id.* at 30-31.

Because the jury found for JamSports, we can safely infer it found JamSports had proven each of the first five elements. The most reasonable interpretation of the verdict on Count 18 is that the jury did not reach the final, "wrongful means" element. The jury was told it could find wrongful means only if Clear Channel had violated the antitrust laws. Because the jury found against JamSports on its antitrust claim, if the jury had reached the "wrongful means" issue on Count 18, it would have had to find in favor of Clear Channel. Because it did not do so, the best interpretation of the verdict is that the jury found Clear Channel had not proved that its actions

5

"constituted competing with a competitor for prospective business" and thus did not reach the wrongful means issue. Jury Instructions at 30.

There are other possibilities, but they do not affect our consideration of Clear Channel's motion. The jury may have believed that Clear Channel was motivated *primarily* by ill will or spite toward JamSports and found against Clear Channel because it misunderstood that Clear Channel was entitled to prevail on Count 18 so long as its intention was *at least partly* to further its own business. Or the jury may have found that Clear Channel had proven that its motivation was at least partly competitive but found against Clear Channel because it erroneously believed that under the instructions, a violation of the antitrust laws was not the only way for JamSports to show that Clear Channel had used "wrongful means" in competing. These possibilities, however, are negated by the rule that absent a contrary indication (which is lacking here), jurors are presumed to have followed their instructions. *See, e.g., Miksis v. Howard,* 106 F.3d 754, 763 (7th Cir. 1997). It is also conceivable that the jury compromised, finding against JamSports on its antitrust claim, but inconsistently finding in JamSports' favor on its contention that Clear Channel had employed "wrongful means." But verdicts are to be interpreted to avoid inconsistency, *see, e.g., Freeman v. Chicago Park Dist.,* 189 F.3d 613, 615 (7th Cir. 1999), and in this case there is a reasonable interpretation of the verdict that avoids inconsistency – namely the one we started out with. Even if, however, one of these alternative interpretations is the correct one, we would nonetheless be required to address whether Clear Channel is, based on the evidence submitted, entitled to entry of judgment in its favor.

Clear Channel argues that as a matter of law, its actions amounted to competition for prospective business, entitling it to judgment in its favor on Count 18. An entity that is

6

competing for prospective business, and is doing so lawfully, cannot be held liable for tortious interference with prospective advantage. *See, e.g., Soderlund Bros., Inc. v. Carrier Corp.,* 278 Ill. App. 3d 606, 615-16, 663 N.E.2d 1, 8 (1995). The so-called "competition privilege" entitles a firm "to divert business from [its] competitors generally as well as from one's particular competitors provided one's intent is, at least in part, to further one's business and is not solely motivated by spite or ill will." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 398 (7th Cir. 2003) (quoting *Soderlund Bros.,* 278 Ill. App. 3d at 616, 663 N.E.2d at 8); *see also, Candalaus Chicago, Inc. v. Evans Mill Supply Co.,* 51 Ill. App. 3d 38, 48, 366 N.E.2d 319, 327 (1977).

As JamSports notes, the competition privilege is an affirmative defense. But this does not preclude Clear Channel from seeking entry of judgment as a matter of law in its favor. Just as a party with the burden of proof can sometimes obtain summary judgment under Rule 56, a party with the burden of proof may, on occasion, be entitled to judgment as a matter of law under Rule 50.

In support of its Rule 50 motion, Clear Channel argues that there is no basis in the record for a reasonable finding that it was motivated *entirely* by ill will or spite. The Court agrees. There was, to be sure, evidence of ill will on the part of Clear Channel directed at JamSports. The evidence showed that certain key Clear Channel personnel, Jeff Lewis and Charlie Mancuso, were angry when they learned of the JamSports - AMA Pro letter of intent. *See, e.g.,* Tr. 2540, 2575, 2729. Similarly, there was evidence of a good deal of spite in discussions by Clear Channel personnel about how they planned to derail the JamSports - AMA Pro relationship. *See, e.g.,* JX 304 (referring to an intent to "hammer and bury" JamSports and AMA Pro and

7

identifying one plan as "something else to stick up AMA's ass"); JX 399 (describing Clear

Channel's *modus operandi* as "crush, kill, destroy"). But under the law and the Court's

instructions to the jury, unless Clear Channel was *entirely* motivated by ill will or spite, it was

entitled to protection of the competition privilege (unless JamSports overcame the privilege,

which it did not). *Cromeens, Holloman, Sibert,* 349 F.3d at 399. Even though Clear Channel

bore the burden of the proof on the competition privilege, it is entitled to judgment as a matter of

law in its favor if the evidence, construed in the light most favorable to JamSports, would not

support a finding in JamSports' favor on this key element.

      The Court can fathom no reasonable interpretation of the evidence, no matter how

favorably it is viewed in JamSports' favor, that would support a jury finding that Clear Channel's

actions were not at least partly motivated by "the intention ... to further its own business." Jury

Instructions at 30. Put another way, no jury reasonably could find that Clear Channel acted as it

did *completely* out of ill will or spite toward JamSports. Not even JamSports, in its response to

Clear Channel's motion, can quite bring itself to say that the evidence supported such a finding;

it says that "[t]he jury reasonably may have found that some, if not all, of Clear Channel's

conduct that caused the termination of JamSports' expectancy ... was indeed motivated by spite

or ill will." JS Mem. at 14.

      This was not a case in which one entity was simply trying to torpedo another's chances to

make a deal. That was certainly part of what Clear Channel was doing, but it was also trying to

get the supercross contract for itself. There was, and could be, no reasonable dispute about that

point. Clear Channel proposed the terms of a deal to AMA Pro; it sent letters and e-mails, and it

initiated meetings and telephone communications, in an all-out effort to get its foot back in the

door and land the contract. In short, Clear Channel was trying to convince AMA Pro to award Clear Channel, and not JamSports, the supercross promotion contract.[2] By definition, that amounts to at least a partial motivation on Clear Channel's part to further its own business. As part of its plan, Clear Channel can be fairly accused of trashing JamSports and its competing efforts, but no reasonable jury could say that the desire to compete – put another way, the desire to get the business for itself – had nothing to do with Clear Channel's motivation.

At the summary judgment stage, the Court permitted JamSports' tortious interference with prospective advantage claim to go to trial only because JamSports' antitrust claim, on which the Court had denied summary judgment, gave it a viable means of overcoming the competition privilege. *JamSports and Entertainment, LLC v. Paradama Productions, Inc.*, 336 F. Supp. 2d 824, 852 (N.D. Ill. 2004). If JamSports' antitrust claim had been eliminated at the summary judgment stage, the prospective advantage claim would have gone along with it. And that is basically where we have now ended up. The jury found against JamSports on the antitrust claim, and as JamSports has made no request to overturn that finding, it is part of the law of the case. Under the circumstances, Clear Channel is entitled to entry of judgment as a matter of law on the claim of tortious interference with prospective advantage.

**3.     Claim of tortious interference with contract (Count 3)**

Count 3, JamSports' claim of tortious interference with contract, concerned the

---

[2] At the same time, Clear Channel hedged its bets. It tried to conclude a deal with the Federation Internationale de Motocyclisme and an entity called Dorna to promote an alternate supercross tour. This was part and parcel of Clear Channel's effort to undercut JamSports' arrangement with AMA Pro, as we will discuss later in this decision. But no reasonable jury could have found that Clear Channel had abandoned the possibility of making its own deal with AMA Pro in favor of putting all its eggs into the FIM / Dorna alternative. Indeed, in its brief, JamSports does not even hint at such an interpretation of the evidence.

November 2, 2001 letter of intent between JamSports and AMA Pro, which among other things required AMA Pro to negotiate exclusively with JamSports for ninety days toward a final promotion agreement for the AMA Pro supercross tour. The Court's instructions to the jury required JamSports to prove that Clear Channel was aware the letter of intent required a period of exclusive negotiations; Clear Channel intentionally and unjustifiably induced AMA Pro to breach its agreement to negotiate exclusively; as a result of Clear Channel's inducement, AMA Pro breached the agreement to negotiate exclusively; and JamSports was damaged by AMA Pro's breach of the agreement to negotiate exclusively. Jury Instructions at 29.

Clear Channel's request for entry of judgment as a matter of law focuses in part on the requirement of "unjustifiable" inducement of a breach. The jury instructions did not define this term, an omission to which neither party objected. Illinois and Seventh Circuit decisions, however, provide guidance to the meaning of this term. To determine whether a defendant acted justifiably in the context of a claim of tortious interference with a contract, Illinois uses a balancing test in which contractual rights are weighed against the particular type of interference claimed. *See George A. Fuller Co. v. Chicago Coll. of Osteopathic Medicine,* 719 F.2d 1326, 1332 (7th Cir. 1983); *Swager v. Couri,* 77 Ill. 2d 173, 190, 395 N.E.3d 921, 928 (1979). The issue "is whether the protection of the particular contract interest at issue merits prohibition of the particular conduct at issue." *Swager,* 77 Ill. 2d at 190, 395 N.E.2d at 928. Interference with a contractual relationship may be justified if the defendant is privileged to engage in the interference. *Id.*

A privilege to interfere in a contractual relationship arises if the defendant acts in a lawful way to preserve a conflicting interest that the law deems to be of equal or greater value than the

10

contractual right at issue. *HPI Health Care Svcs., Inc. v. Mt. Vernon Hosp, Inc.*, 131 Ill. 2d 145, 157, 545 N.E.2d 672, 677 (1989); *Swager*, 77 Ill. 2d at 190, 395 N.E.2d at 928. Illinois courts have recognized a privilege to interfere in a contract on the part of officers and directors of one of the contracting parties, *see, e.g., Swager*, 77 Ill. 2d at 191, 395 N.E.2d at 921; outside entities with a contractual duty to a contracting party similar to that of a corporate officer, *see HPI*, 131 Ill. 2d at 157, 545 N.E.2d at 677; a governmental official acting vis-a-vis a contract of the governmental entity, *see Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 512-13, 568 N.E.2d 870, 878-79 (1991); an architect or engineer retained to supervise a construction project, *see, e.g., Certified Mechanical Contractors, Inc. v. Wight & Co.*, 162 Ill. App. 3d 391, 400-01, 515 N.E.2d 1047, 1055 (1987); a medical doctor retained to give a medical opinion regarding an employee's fitness for duty, *see Turner v. Fletcher*, 302 Ill. App. 3d 1051, 1058, 706 N.E.2d 514, 519 (1999); and an entity seeking to protect its intellectual property rights, *see Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 49, 594 N.E.2d 1344, 1350 (1992).

As the Seventh Circuit has noted, and as the cases catalogued above suggest, the clearest cases for privilege "invoke legal and fiduciary duties." *Delloma v. Consolidated Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993). In this case, the justification invoked by Clear Channel is its right to compete with JamSports for the AMA Pro contract. The jury instructions did not identify this as an issue on the claim of tortious interference with contract, and for good reason. In contrast to the tort of interference with prospective advantage, competition does not provide a privilege to interfere in a contract. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999); *Mannion v. Stallings & Co.*, 204 Ill. App. 3d 179, 190-91, 561 N.E.2d 1134, 1141 (1990). As the Seventh Circuit has stated, "[t]here is in general nothing wrong with one [entity] trying to

11

take a client from another *if this can be done without precipitating a breach of contract.*"
*Speakers of Sport,* 178 F.3d at 865 (emphasis added). In short, Clear Channel's contention that
all it was doing was competing does not entitle it to judgment in its favor or a new trial on Count
3.

Clear Channel also argues that JamSports failed to prove that Clear Channel intentionally
induced AMA Pro to breach its agreement to negotiate exclusively with JamSports. Clear
Channel appears to contend that AMA Pro was not precluded by the letter of intent from merely
receiving alternative proposals; there was no evidence Clear Channel was aware of any such
prohibition; and its submission of an alternative proposal did not constitute inducement of a
breach of the agreement to negotiate exclusively.

Clear Channel relies heavily on *Feldman v. Allegheny Int'l, Inc.,* 850 F.2d 1217 (7th Cir.
1988). *Feldman* concerned Sunbeam Corporation's search for a buyer for a group of
subsidiaries. Sunbeam hired Allegheny to find a buyer. Feldman and Allegheny signed a letter
of intent that set a minimum price and committed Sunbeam not to negotiate with anyone other
than Feldman while the proposed acquisition was being pursued; as in the present case, the letter
of intent provided that it was not a binding agreement for the sale itself. Eventually another
buyer, Moore, made an offer to purchase the subsidiaries; Allegheny negotiated with Moore; and
Sunbeam eventually made a deal with Moore. *See id.* at 1219-20. Much as in the present case,
Feldman sued Allegheny and Moore for tortious interference with the agreement to negotiate
exclusively and for tortious interference with prospective advantage. The Seventh Circuit ruled
that because the letter of intent did not guarantee a deal would be concluded, "complaints about
the Moore group's competitive overtures ... are ended by the Illinois competitor's privilege."

12

*Id.* at 1224. The court went on to state that "[t]he only possible claim focuses solely on the letter of intent," and specifically on the agreement to negotiate exclusively; the court stated that "[o]ne can imagine interference with this right ...." *Id.* But, it held, Feldman had "failed to introduce any evidence from which a jury could conclude that the Moore group knew of his exclusive negotiations with Allegheny. [Feldman's] papers merely demonstrate that the Moore group had general knowledge of the letter of intent, but not its terms, and in particular, not that it contained any exclusivity provision." *Id.* "[E]ven if Moore suspected some contractual obligation bound Allegheny, no evidence indicates how he should have known the degree of exclusivity, i.e. whether it even prohibited mere exchanges of information." *Id.* at 1225.

    *Feldman* does not assist Clear Channel in its attack on the verdict as to liability. First of all, it is clear from the context of the Seventh Circuit's ruling that its comments about the competitor's privilege concerned Feldman's claim of tortious interference with prospective advantage, not his claim of tortious interference with contract. If those comments had also concerned the latter claim, there would have been no reason for the court to go on to address the question of whether Moore had knowledge of the agreement to negotiate exclusively. And even if this were somehow unclear, as noted earlier the Seventh Circuit and Illinois courts have since definitively held that competition *does not* provide a privilege to interfere in a contract. *See supra* at 11.

    Second, and more importantly for present purposes, *Feldman* does not stand for the proposition that sending a proposal to a party that has contracted to negotiate exclusively with someone else cannot amount to tortious interference with contract. The issue in *Feldman* was the defendant's knowledge of the particulars of the contractual exclusivity provision, not the

13

sufficiency of the evidence of interference or inducement.

In any event, in this case, unlike in *Feldman,* ample evidence supported the jury's determination that Clear Channel knew the details of the letter of intent's exclusivity provision. First, as JamSports notes, Clear Channel concedes in its brief that after it learned of the letter of intent between JamSports and AMA Pro, it also learned that "there was likely an exclusive negotiating period." CC Mem. at 2. That is an understatement of what the evidence showed. Jeff Lewis, chairman of Clear Channel Entertainment, admitted that Rick Gray, chairman of the AMA Pro board, advised him on November 8 or 9, 2001 that the letter of intent contained a ninety-day exclusive negotiation period. Tr. 2484, 2543-45. Clear Channel suggests the evidence on this score was unclear, as AMA Pro board members said they were free to accept competing proposals. Clear Channel's basis for this argument is that Ray Blank, an AMA board member, told Lewis that AMA Pro was free to accept proposals. But Blank was not called to testify, and Lewis testified that Blank told him he had not actually read the letter of intent. Tr. 2486-87.

P.J. Harvey, an AMA Pro board member, testified that he learned of the exclusive negotiating provision on November 6 and called Lewis to explain that the letter of intent prohibited AMA Pro from "talking to anybody regarding negotiations of a contract regarding Supercross series." Tr. 1900-01, 1911, 1923. Two days later, on November 8, Harvey told Lewis and Charlie Mancuso, president of Clear Channel's motor sports division, that he was unable to discuss supercross offers due to the exclusivity provision. Harvey admitted that he did not tell Clear Channel that AMA Pro could not accept proposals, but this was only because he thought it was unnecessary, as Clear Channel had already been informed of the exclusivity

14

period. Tr. 1924-25. Despite receiving this information, Lewis faxed Harvey a new supercross offer on November 9, 2001, increasing Clear Channel's offer to $1.9 million. JX 593; Tr. 1923-26. The jury reasonably could find that statements in Clear Channel's proposals that they were submitted "under the impression" that AMA Pro could negotiate with Clear Channel, and that AMA Pro should consider Clear Channel's revised offer only if it was free to do so, were, in light of Clear Channel's demonstrated knowledge of the exclusivity agreement, nothing more than fig leaves used to cover Clear Channel's true intentions.

In addition, on November 21, 2001, Lewis sent Harvey a letter in which he agreed to extend the deadline for AMA Pro to decide whether to accept Clear Channel's November 19 offer. JX 596; Tr. 2513. Lewis's letter stated that Clear Channel was extending the deadline "[p]ursuant to our telephone conversation today," which the jury reasonably could infer indicated that he had actually discussed the terms of a deal with Harvey, an AMA Pro board member. Notes in the margin of Harvey's copy of the financial terms of Clear Channel's November 9 proposal also reflect discussion of the terms of a deal between AMA Pro and Clear Channel. JX 593 (Harvey's handwritten margin notes indicating that "Mr. Lewis said this was ... final offer"). Discussing a deal goes far beyond mere submission of a proposal.

In short, the evidence, construed in JamSports' favor, supported a finding that Clear Channel not only sent AMA Pro proposals, but discussed the terms of its proposals and induced AMA Pro's representatives to do so, and thereby to breach the obligations of the letter of intent, obligations of which Clear Channel was fully aware. This evidence provided a reasonable basis for a verdict in JamSports' favor on Count 3 irrespective of *Feldman*.

In addition, Clear Channel engaged in dealings with third parties that were directed at

15

AMA Pro as part of what the jury reasonably could have determined was Clear Channel's effort to induce AMA Pro to violate its exclusivity obligation. This evidence satisfied the inducement requirement even if Clear Channel's submission of a proposal and its discussions with AMA Pro were insufficient by themselves to do so.

Specifically, the jury heard evidence that Clear Channel engaged in a plan to lock up a number of key supercross stadiums that had historically held successful supercross events, so that JamSports would be unable to promote it series at those stadiums. JX 7; Tr. 797-808; 827-42 (testimony of Eric Cole; Clear Channel wanted to "start locking up Supercross stadiums"); 887-90. There was evidence from which the jury reasonably could have found that as part of this plan, personnel at Clear Channel's Music Division assisted in "arm-twisting" venue managers. Tr. 961-67; 1011-15; 1077-80. The jury reasonably could find that the purpose of this plan was to ensure that JamSports could not hold a profitable supercross series. JX 20, 89, 99, 115, 584, 794, 1075, 1090, 1094. Further, the jury reasonably could find that Clear Channel carried out this plan knowing full well that its efforts, if successful, would lead AMA Pro to jump ship and return to Clear Channel, in contravention of AMA Pro's exclusivity obligation.

There was also evidence that Clear Channel sought to conclude an alliance with Dorna and the Federation Internationale de Motocyclisme (FIM) to promote an alternate supercross series, knowing that this would put AMA Pro at risk of expulsion from the FIM if it contracted with JamSports. JX 599; 779; 91; Tr. 1696-1714 (if FIM were to sanction a supercross event in the United States, the AMA could not sanction an event on the same date); 1722 (it would also be impossible for the AMA and JamSports to run supercross on other dates); 1730 (if Clear Channel finalized a deal with Dorna and FIM, it would "in effect neutralize any attempt by

16

AMA/Jam to stage a domestic Supercross in any of our 15 dates"); 1736 ("if we [Clear Channel] do not lock up the FIM sanction, FIM will join AMA and Jam and our United States Supercross series and what it generates is at risk") 1726-1749; 1783.

Clear Channel contends that its actions vis-a-vis parties other than AMA Pro are legally insufficient to constitute tortious interference with contract. The Court carefully considered and rejected this argument at the close of JamSports' case at trial, issuing a Memorandum Opinion at that time, *see JamSports and Entertainment, LLC v. Paradama Productions, Inc.,* 360 F. Supp. 2d 905 (N.D. Ill. 2005) (*"JamSports III"*), and we now reject it once again. In addition to the points noted in *JamSports III,* we note that the Illinois Supreme Court's enumeration of the elements of tortious interference with contract has never included a limitation on actionable interference to contacts with the party who contracted with the plaintiff; rather, the requirement is simply that the defendant's conduct caused a breach. *See, e.g., HPI,* 131 Ill. 2d at 154-55, 545 N.E.2d at 676. And as the Seventh Circuit has noted, the Restatement (Second) of Torts indicates that a party is subject to liability for intentionally interfering with the performance of a contract "'by inducing *or otherwise causing* the third party not to perform the contract.'" *Europlast, Ltd. v. Oak Switch Systems, Inc.,* 10 F.3d 1266, 1275 n.3 (7th Cir. 1993) (quoting Restatement (2d) of Torts § 766) (emphasis added). The jury reasonably could have found that Clear Channel's actions were directed at AMA Pro and induced it to breach its agreement to negotiate exclusively with JamSports, which Clear Channel had basically elbowed out of the market.

In addition, at least one Illinois appellate court, in the analogous context (for this purpose, at least) of the related tort of interference with prospective advantage, has specifically rejected a

17

requirement that the defendant have contact with the party with whom the plaintiff sought to have a relationship. In *Schuler v. Abbott Labs.*, 265 Ill. App. 3d 991, 639 N.E.2d 144 (1993), the court stated that the plaintiff in such a case is required to "allege action by the interfering party directed toward the party with whom the plaintiff expects to do business. Defendant argues this requirement necessarily implies that the interfering party must make contact with the third party. While it is true that 'action directed at a third party' will often include contact with the third party, *we can find no requirement of contact in the law and do not create one now.*" *Id.* at 994-95, 639 N.E.2d at 147 (emphasis added).

In sum, the jury reasonably could have found that Clear Channel's contacts with various other parties were directed at AMA Pro and were done with the purpose of inducing AMA Pro to breach its agreement to negotiate exclusively with JamSports. For these reasons, Clear Channel is not entitled to judgment as a matter of law on Count 3. Nor, for the same reasons, can the Court conclude that the liability verdict was against the manifest weight of the evidence.

A new trial nonetheless will be required on the issue of damages on Count 3, due to a significant ambiguity in the damage award. Because the Court has granted judgment as a matter of law on the claim of tortious interference with prospective advantage claim, we must address whether the compensatory damage verdict on the claim of tortious interference with contract can stand. The damages for the two torts are not necessarily the same. Under *Feldman,* damages for tortious interference with agreement to negotiate exclusively are "limited to those flowing from the loss of exclusivity; the defendant would be free to prove that the plaintiff's deal would have fallen through anyway." *Feldman,* 850 F.2d at 1224.

The jury, however, was not asked to return separate damage verdicts on the two tortious

18

interference claims; rather, it returned a single damage verdict on both claims. If the jury's verdicts for JamSports on both claims had withstood Clear Channel's post-trial attacks, the return of a single damage verdict would pose no obvious problem. The Court has, however, entered judgment as a matter of law in Clear Channel's favor on the prospective advantage claim, which concerned the loss of the deal itself, not just the loss of the obligation of exclusivity. This leaves significant uncertainty as to whether the jury would have returned the same award if only the tortious interference with contract claim had been tried.

This uncertainty is highlighted by the parties' arguments on Clear Channel's contention that the jury's award of $17-plus million in lost profits against Clear Channel on the tortious interference claims is inconsistent with its award of only $1 in lost profits against AMA Pro on the breach of contract claim. Ordinarily damages for tortious interference with a contract are the same as damages for breach of that contract. *See, e.g., Restatement (Second) of Torts* § 774A, comment e (1979) (damages recoverable for breach of contract are common to actions against the breaching party and the party inducing the breach); *see also Klaff v. Wieboldt Stores, Inc.,* No. 84 C 90, 1988 WL 142163, *6 (N.D. Ill. Dec. 23, 1988) ("The aim of awarding damages for tortious interference is the same as that of awarding damages for breach of contract - to place the injured party in the same economic position it would have been in had the contract not been breached."). This does not mean the verdicts are necessarily inconsistent. As noted earlier, verdicts are to be interpreted, where possible, to avoid inconsistency. *Freeman,* 189 F.3d at 615. In its separately-filed response to Clear Channel's post-trial motions, AMA Pro has advanced a way to harmonize the two verdicts: the jury found that JamSports' lost profits were attributable to Clear Channel's conduct, but not that of AMA Pro. But this makes sense only if, as JamSports itself points out in

19

its brief, the jury attributed the lost profits to the prospective advantage claim, not the tortious interference with contract claim. JS Mem. at 16 ("It is obvious that the damages occasioned by AMA Pro's breach of certain provisions of the LOI could possibly be very different from those occasioned by Clear Channel's conduct that prevented JamSports and AMA Pro from going forward with their contemplated business relationship under the final promotion agreement.").

Under the circumstances, the instruction to the jury to return a single damage verdict on the two tortious interference claims, combined with the potential difference in the damages legally recoverable for each claim, creates a significant uncertainty that leaves the Court unable to determine whether the jury would have returned the same compensatory damage award had it considered only the claim of tortious interference with contract. This, in the Court's estimation, requires a new trial, at least as to damages, on Count 3, which will permit an unambiguous damage award. Because the jury was told that in awarding punitive damages, it had to consider "the relationship of any award of punitive damages to the amount of actual harm inflicted on the plaintiff," Jury Instructions at 42-43, we likewise vacate the punitive damage award and will resubmit it to the jury at retrial.[3]

The Court's belief is that a new trial is required only on the issue of damages. JamSports' punitive damages claim, however, necessitates assessment of (among other things) the nature of the defendant's conduct. *See* Jury Instructions at 42. Thus it is likely that a damages-only trial would approximate the previous liability-plus-damages trial.

---

[3] For this reason, the Court need not consider, at this juncture, Clear Channel's challenge to the sufficiency of the evidence to support the punitive damage award. That challenge is more appropriately addressed on retrial, based on the evidence adduced before the jury that will reconsider the issue of compensatory and punitive damages.

## Conclusion[4]

For the reasons stated above, the Court denies AMA Pro's motion to alter or amend the judgment [docket # 333-1], grants Clear Channel's motion for judgment as a matter of law [# 337-1] as to the claim of tortious interference with prospective advantage but otherwise denies that motion, and grants Clear Channel's motion for a new trial [# 337-2] as to the claim of tortious interference with contract. JamSports' petition for costs is denied as moot. The case is set for a status hearing on August 22, 2005 at 9:30 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date:   August 15, 2005

---

[4] The Court incorporate and adopts its prior rulings on the other issues raised by Clear Channel, which replicate certain arguments it made prior to and during trial.

21