# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMSPORTS AND ENTERTAINMENT, LLC, | )<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 02 C 2298<br>) |
| PARADAMA PRODUCTIONS, INC., et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff JamSports and Entertainment, LLC has moved for reconsideration of the Court's order granting the Clear Channel defendants' motion for judgment as a matter of law on JamSports' claim of tortious interference with prospective advantage and ordering a new trial on the question of damages on JamSports' claim of interference with contract. JamSports asks the Court to reinstate the jury's verdict. For the reasons stated below, the Court is persuaded by JamSports' argument that it erred in entering judgment in Clear Channel's favor on the prospective advantage claim but orders a new trial rather than reinstating the verdict.

### Discussion

We begin by briefly summarizing the ruling at issue. *See JamSports and Entertainment, LLC v. Paradama Productions, Inc.*, 382 F. Supp. 2d 1056 (N.D. Ill. 2005). The case arose from a letter of intent between JamSports and AMA Pro Racing dated November 2, 2001. The letter of intent stated the parties' intention "to enter into an agreement to promote AMA Supercross events and undertake related sales and marketing matters." It required AMA Pro and JamSports

to keep the letter of intent's terms confidential; it also obligated the parties to negotiate with each other exclusively and in good faith toward a final agreement for a period of 90 days and to disclose any proposals received from third parties. Prior to trial, the Court ruled that the letter of intent was not itself a binding contract for promotion of the AMA supercross tour, but that the confidentiality and exclusivity provisions were binding and enforceable.

Following expiration of JamSports' 90 day exclusivity period, AMA Pro ultimately signed a promotion contract with Clear Channel, not JamSports. JamSports sued AMA Pro for breach of contract, citing AMA Pro's noncompliance with the exclusivity and confidentiality obligations. The jury found in JamSports favor on this claim and awarded damages of $169,315.19, consisting of $168,315.19 for lost out-of-pocket expenses and $1.00 for lost profits. JamSports sued the Clear Channel defendants ("Clear Channel") for interference with the JamSports-AMA Pro contract, interference with Clear Channel's prospect of concluding a final promotion agreement, and violation of the antitrust laws. The jury found in Clear Channel's favor on the antitrust claim but in JamSports' favor on the other two claims. The jury awarded JamSports lost profits of $17,144,573 and punitive damages of $73,000,000. The award did not distinguish between the two tortious interference claims, as the jury was not asked to make such a distinction.

AMA Pro filed a post-trial motion seeking to amend the judgment to require JamSports to make an election between recovery of the out-of-pocket expenses awarded against AMA Pro for breach of contract and recovery of the lost profits awarded against Clear Channel for interference with the contract. AMA Pro did not seek a new trial. The Court rejected AMA Pro's election of remedies argument, finding that there was no basis to believe that the jury had effectively double-

2

counted JamSports' damages. *JamSports*, 382 F. Supp. 2d at 1059.

Clear Channel filed a post-trial motion for entry of judgment as a matter of law or in the alternative for a new trial. The Court granted judgment as a matter of law in Clear Channel's favor on the claim of tortious interference with prospective advantage. The Court ruled, in effect, that Clear Channel had established as a matter of law that it was entitled to the so-called "competition privilege" as a defense to the prospective advantage claim, and that the only viable way around that privilege available to JamSports in this case – its contention that Clear Channel had employed "wrongful means" by violating the antitrust laws – was foreclosed by the jury's verdict in Clear Channel's favor on the Sherman Act claim. *Id.* at 1060-62. On the claim of tortious interference with contract, the Court rejected Clear Channel's request for entry of judgment as a matter of law or for a new trial on the issue of liability but ordered a new trial on the issue of damages. *Id.* at 1062-66. The Court concluded that the ruling granting judgment as a matter of law on the prospective advantage claim, combined with the undifferentiated damage award against Clear Channel, left a significant uncertainty as to whether the jury would have returned the same award if the only verdict favoring JamSports had been on the tortious interference with contract claim. *Id.* at 1067-68.

JamSports makes four arguments in support of its request for reconsideration of Court's rulings. Its first argument is that Clear Channel was not entitled to assert the competition privilege at all. JamSports contends that the privilege is available only where the prospective relationship interfered with is the subject of lawful competition between the plaintiff and the defendant. JamSports argues that because it had an exclusive right to pursue a relationship with AMA Pro during the exclusivity period of the letter of intent, Clear Channel was not entitled to

3

compete lawfully.

In support of this argument, JamSports relies on *Mannion v. Stallings & Co.*, 204 Ill. App. 3d 179, 561 N.E.2d 1134 (1990). In *Mannion*, the plaintiff, Mannion, owned certain patents that he had licensed to his company, third party defendant Mannion Mechanical Services, Inc. MMSI granted the defendant, Stallings & Co., an exclusive license to manufacture, use, and sell products covered by the patent. Stallings employed Mannion as a commissioned salesman. Mannion sued Stallings to recover allegedly unpaid commissions. Stallings counterclaimed against Mannion and MMSI, alleging they had interfered with a contract and prospective relations with a third party, Honeywell, that had signed a purchase order with Stallings but ultimately gave the job to MMSI. The jury found in Stallings' favor on what the court described as Stallings' "action for intentional interference with contract or business expectancy." *Id.* at 187, 561 N.E.2d at 1139. On appeal, the Appellate Court ruled that Stallings had a reasonable expectancy of entering into a business relationship with Honeywell, based on its exclusive right under the license to market the products Honeywell purchased. *Id.* at 188, 561 N.E.2d at 1139. The court rejected Mannion and MMSI's claim that they were privileged to interfere in Stallings' prospective business relationship with Honeywell. It stated that Mannion and MMSI had cited no case finding "a defendant's mere property or economic interest to be [an] equal or greater interest than the plaintiff's contractual rights or valid business expectancies." *Id.* at 190, 561 N.E.2d at 1140. The court noted that prior decisions had granted "a privilege of lawful economic competition where the defendant is interfering with a competitor's prospective business relationship rather than an existing contract," but that Stallings had proved "that it had the exclusive right under the patent to manufacture and sell" the products in question and that

4

"Mannion's relation to the Honeywell project arose from his employment relationship with Stallings." *Id.* at 190-91, 561 N.E.2d at 1141. Thus, the court concluded, Mannion and MMSI had "provided no basis upon which to invoke the existence of a privilege." *Id.* at 191, 561 N.E.2d at 1141.

JamSports relies largely on *Mannion* to argue that because it had the exclusive right to negotiate with AMA Pro during the 90 day period after the execution of the letter of intent, Clear Channel, like Mannion and MMSI in the *Mannion* case, had no legal right to compete with JamSports for the AMA contract and thus no entitlement to assert the competition privilege. Clear Channel raises a serious question about the applicability of *Mannion*,[1] but we need not resolve the issue at this time, for the argument has been forfeited by JamSports as a basis for reconsidering the Court's decision to grant Clear Channel judgment as a matter of law. JamSports had, and bypassed, at least four opportunities to argue that Clear Channel was not legally entitled to assert the competition privilege. First, in response to Clear Channel's motion for summary judgment, which relied directly on the competition privilege, JamSports argued not that the privilege did not legally apply, but rather that Clear Channel was not entitled to summary judgment because it had employed wrongful means, specifically, an illegal restraint of trade. *See* Pl. Mem. in Opp. to Clear Channel Mot. for Summ. Judg. at 44-45. Second, JamSports never contended at trial that the competition privilege could not legally be asserted by Clear Channel. Third, JamSports offered no objection to the Court's instruction to the jury that allowed the jury

---

[1] Among other things, application of *Mannion* would seem to blur the distinction between tortious interference with contract and tortious interference with prospective advantage. Clear Channel also notes that in *Mannion*, the allegedly interfering party had given up its right to compete, which Clear Channel did not do. We need not and do not determine at this time whether these points warrant non-application of *Mannion* in the present context.

5

to consider the competition privilege with regard to the prospective advantage claim. Fourth, and perhaps most significantly for present purposes, when Clear Channel moved for judgment as a matter of law, specifically relying on the competition privilege, JamSports did not so much as hint in response that Clear Channel was not legally entitled to the privilege. *See* Mem. in Support of Clear Channel Defs' Mot. for Judg. as Matter of Law (etc.) at 10-11; Pl. Opp. to Clear Channel Post-Judgment Mot. at 13-14.[2] Having foregone reliance on this argument on the judgment as a matter of law / new trial issue, JamSports cannot raise it as a basis for reconsideration. Reconsideration is appropriate, generally speaking, only when the Court overlooked or misunderstood something; it is an inappropriate way of asserting arguments that were overlooked by a party to whom the arguments were then available. *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Quaker Alloy Casting Co. v. Gulfco Inds., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). JamSports has offered no reason why, having passed up this argument before, it should be allowed to assert it as a basis for reconsideration.

JamSports' third argument is that in granting judgment as a matter of law in Clear Channel's favor, the Court in effect changed the legal standard for assessing the prospective advantage claim. According to JamSports, the instruction to the jury describing the elements of the prospective advantage claim required the jury, before finding in Clear Channel's favor on the competition defense, to find *both* that Clear Channel acted at least partly to further its own interests *and* that its actions were not in any way motivated by spite or ill will. JamSports says

---

[2] JamSports' argument was limited to the contention that on the evidence, Clear Channel's assertion of the privilege had been overcome.

6

the Court applied a different test in granting judgment as a matter of law, ruling in Clear Channel's favor because it had acted at least partly to further its own interests, even though the Court acknowledged there was also evidence of spite and ill will.

JamSports' argument does not hold water; it has misread the jury instruction. Indeed, JamSports' argument is premised on a purported paraphrase of the instruction that actually adds words to the instruction and thereby changes its import. The instruction stated that "[a] firm is entitled to compete for prospective business, so long as it acts with the intention, at least in part, of furthering its own business interests, and is not motivated by spite or ill will." Jury Instructions at 30. This sufficiently advised the jury that what it had to decide was whether Clear Channel had acted at least partly with the intention of furthering its own interests, or whether, by contrast, it had acted out of spite or ill will. In its brief, JamSports says the jury was told that it had to find "(1) that Clear Channel acted with the intent, at least in part, to further its own business; and (2) that Clear Channel's actions were *in no way* motivated by spite or ill will." Pl. Mem. in Support of Mot. to Reconsider at 11 (emphasis added). If the words "in no way" or their equivalent had appeared in the instruction to the jury, perhaps JamSports might have a point; but those words were not there.

The instruction perhaps could have and should have been clearer – by inserting the word "solely" after the word "motivated" – but even without this, it was clear enough to communicate the proper legal principle. Indeed, it is noteworthy that JamSports does not challenge, as a legal matter, the proposition that a firm claiming the privilege must be "solely motivated by spite or ill will" to lose the privilege. *See JamSports*, 382 F. Supp. at 1061 (quoting *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) (in turn, quoting *Soderlund Bros., Inc.*

7

*v. Carrier Corp.*, 278 Ill. App. 3d 606, 616, 663 N.E.2d 1, 8 (1995)). For these reasons, the Court rejects JamSports' argument that our review of the sufficiency of the evidence was barred by the jury instruction. We need not consider the other arguments forwarded by Clear Channel in opposition to this argument.

JamSports' fourth argument is that the jury's damage award should not have been overturned. It argues that the jury reasonably could have found that Clear Channel's interference prevented JamSports from entering into a final promotion agreement and thus from earning the profits that the jury awarded in damages, and that the damages for both the interference with contract and interference with prospective advantage claims could well be the same. Both points may be correct, but neither calls into question the Court's order of a new trial on the question of damages on the interference with contract claim. The proposition that the jury properly could have awarded over $17 million in lost profits on the tortious interference with contract claim by itself does not mean that is what it did or would have done. When one throws into the mix the fact that the jury awarded only $1 in lost profits against AMA Pro for breaching the contract, there is ample reason to question whether the jury intended to make a $17 million lost profits award against Clear Channel for interfering with the same contract – or more specifically, if that is what it would have done absent the prospective advantage claim.

This brings us to JamSports' second argument, which we consider last for reasons that will become clear. JamSports contends that the Court erred in finding that the evidence required judgment as a matter of law in Clear Channel's favor on the competition privilege. It argues that the jury was not required to find that Clear Channel was even partly motivated by a desire to further its own business interests, and that if one considers the evidence on this point in the light

8

most favorable to JamSports, the jury reasonably could have found that Clear Channel was, in fact, motivated entirely by spite or ill will and thus not entitled to the privilege.

Before delving into this issue, we set out the elements that the jury had to consider in addressing the prospective advantage claim. The jury was told that JamSports had to prove that it had a reasonable expectation of entering into a business relationship with AMA Pro, that Clear Channel knew this, and intentionally and unjustifiably interfered,[3] causing termination of JamSports' expectation and resulting damage to JamSports. Jury Instructions at 30. If JamSports proved each of these things, the jury was told, it had to consider "whether Clear Channel's actions constituted competing with a competitor for prospective business." *Id.* The jury was told that Clear Channel had to prove this by a preponderance of the evidence, and it was given the definition of the competition privilege quoted earlier. If Clear Channel failed to prove the privilege, the jury was advised, JamSports was entitled to prevail. If Clear Channel proved the privilege, the jury then had to consider whether JamSports had proven that Clear Channel had employed "wrongful means" – defined in the instructions as a violation of the antitrust laws. *Id.* at 30-31. If so, then JamSports was entitled to prevail.

In ruling on Clear Channel's judgment as a matter of law / new trial motion, the Court explained why the jury's verdict was best understood as having been based on a determination that Clear Channel had not proved its entitlement to the competition privilege by a preponderance of the evidence – and not, for example, as based on a determination that JamSports had proven wrongful means. *JamSports*, 382 F. Supp. 2d at 1060. We concluded that

---

[3] The jury was told that Clear Channel acted intentionally if it knew interference with the prospective relationship was substantially certain to occur, and unjustifiably if it acted for the sole or primary purpose of interfering with JamSports' expectation. Jury Instructions at 32.

there was no basis in the record for a reasonable finding that Clear Channel was motivated entirely by ill will or spite and thus was not entitled to the competition privilege in the first place. *Id.* at 1061. The Court stated:

> This was not a case in which one entity was simply trying to torpedo another's chances to make a deal. That was certainly part of what Clear Channel was doing, but it was also trying to get the supercross contract for itself. There was, and could be, no reasonable dispute about that point. Clear Channel proposed the terms of a deal to AMA Pro; it sent letters and e-mails, and it initiated meetings and telephone communications, in an all-out effort to get its foot back in the door and land the contract. In short, Clear Channel was trying to convince AMA Pro to award Clear Channel, and not JamSports, the supercross promotion contract. By definition, that amounts to at least a partial motivation on Clear Channel's part to further its own business. As part of its plan, Clear Channel can be fairly accused of trashing JamSports and its competing efforts, but no reasonable jury could say that the desire to compete – put another way, the desire to get the business for itself – had nothing to do with Clear Channel's motivation.

*Id.* at 1061-62 (footnote omitted). In a footnote, the Court noted that Clear Channel had "hedged its bets" by trying to conclude a deal with another entity to promote an alternate supercross tour, but we concluded that "no reasonable jury could have found that Clear Channel had abandoned the possibility of making its own deal with AMA Pro in favor of putting all its eggs into the ... alternative." *Id.* at 1062 n.2.

In its motion to reconsider, JamSports points to evidence it says supports a finding that Clear Channel did, in fact, act entirely out of ill will or spite, and not in any part to get the AMA sanction for itself. Specifically, JamSports argues there was evidence that Clear Channel believed that it, and it alone, had been responsible for the profitability of the AMA supercross tour, and that it regarded AMA Pro as an ingrate, or worse, for even considering hiring a different promoter. There was also evidence that the relationship between Clear Channel and AMA Pro

10

and their respective predecessors had been characterized by acrimony, conflict, and distrust. In addition, JamSports cites statements by Clear Channel representatives that the company did not need the AMA sanction to promote a profitable supercross series; that riders and equipment manufacturers would follow Clear Channel, not AMA Pro; and that the AMA added nothing of value to the series but merely supplied the referees. JamSports also relies on evidence that Clear Channel had developed plans to bypass AMA Pro by setting up its own sanctioning body. Finally, JamSports cites Clear Channel's pursuit of a completely separate supercross sanction from an international sanctioning body and its efforts to set up a completely separate tour, arguably for the purpose of "neutralizing" the AMA. From all this evidence, JamSports argues, the jury rationally could have found that Clear Channel had no intention of trying to make its own deal with AMA Pro and instead tried to torpedo a JamSports-AMA Pro deal as a way of getting revenge on the ingrate AMA Pro and the upstart JamSports.

Clear Channel disputes this, contending that everything it did had, at least, a dual effect — not just hampering JamSports' efforts, but also furthering its own position by securing resources for a successful supercross series. Clear Channel also points out that once JamSports' effort to secure the AMA sanction failed, Clear Channel obtained the sanction for itself; this, Clear Channel contends, shows this was at least partly its purpose all along.

Though reconsideration of a ruling is an unusual event, it is appropriate if the Court made an error of "apprehension" as opposed to an error in its reasoning — in other words, if the Court misunderstood something when it ruled. *See, e.g., Bank of Waunakee,* 906 F.2d at 1191. Following careful reflection, the Court is persuaded that it did, in fact, commit such an error in granting judgment as a matter of law on the prospective advantage claim, and that it should have

11

instead granted a new trial.

The jury was instructed that Clear Channel bore the burden of proving that it was entitled to the competition privilege – by proving that it was acting at least partly to further its own interests, and not solely out of spite or ill will. The Court's ruling that Clear Channel was entitled to judgment as a matter of law amounted to a determination that the party bearing the burden of proof had satisfied it as a matter of law, that no reasonable jury could have found that it had failed to carry that burden.

In making this determination, the Court was required to view the evidence in the light most favorable to JamSports, and to draw all reasonable inferences in its favor. *See, e.g., Filipovich v. K&R Express Systems, Inc.*, 391 F.3d 859, 863-64 (7th Cir. 2004). The Court was certainly aware of these requirements; they were noted at the outset of our decision on the post-trial motions. *See JamSports*, 382 F. Supp. 2d at 1058. What the Court failed to fully appreciate and take into account, however, was the interplay between these two points.

JamSports did not bear a burden of proof on the competition privilege issue; the burden was on Clear Channel to prove by a preponderance of the evidence that it had acted at least in part for the purpose of furthering its own interests. The Court's conclusions, however, subtly shifted the burden. We stated: "Clear Channel argues there is no basis in the record for a reasonable finding that it was motivated *entirely* by ill will or spite. The Court agrees." *JamSports*, 382 F. Supp. 2d at 1061 (emphasis in original). And we went on to state: "[n]o jury reasonably could find that Clear Channel acted as it did *completely* out of ill will or spite toward JamSports." *Id.* (emphasis in original). These conclusions misstated the issue. To prevail, JamSports did not need a "finding" by the jury that Clear Channel was motivated entirely by ill

12

will; rather, all it needed was a jury finding that Clear Channel had not met its burden of proving that it was at least partly motivated to further its own business. In short, rather than trying to determine whether a reasonable jury could have found against Clear Channel, the Court, in the quoted passages, asked whether a reasonable jury could have made a finding that favored JamSports.

The difference may seem subtle, but it is significant. Under the Court's instructions, the jury was not required to make a finding in JamSports' favor on the competition privilege issue; it was required to find whether Clear Channel had met its burden of proof. The Court's phrasing of the issue in essence required a determination that JamSports had carried a burden that the law did not require it to bear.

Had the Court fully and correctly perceived the significance of the fact that Clear Channel bore the burden of proof, we would have been required to deny Clear Channel's motion for judgment as a matter of law. In determining whether it was possible for a rational jury to find Clear Channel had not met *its* burden, we had to review the evidence in the light most favorable to JamSports – or to put it another way, in the light most unfavorable to Clear Channel.[4] Given this exacting standard, the Court could not appropriately conclude that there was no way for a reasonable jury to find that Clear Channel had failed to carry its burden. A jury rationally could

---

[4] Clear Channel points out that the Court commented that had the antitrust claim been eliminated at the summary judgment stage, "the prospective advantage claim would have gone along with it." *JamSports*, 382 F. Supp. 2d at 1062. In retrospect, that was an overstatement. The Court did not actually assess in its summary judgment ruling the sufficiency of evidence on Clear Channel's entitlement to the competition privilege. We did not need to do so at that point, because we concluded that JamSports had offered a basis that would permit a reasonable jury to find that it had overcome the privilege even if Clear Channel was entitled to assert it. *See JamSports and Entertainment, LLC v. Paradama Productions, Inc.*, 336 F. Supp. 2d 824, 852 (N.D. Ill. 2004).

have concluded that Clear Channel had failed to show that its acts that the jury believed amounted to unjustified interference were done in order to further its own business, rather than to get back at AMA Pro and JamSports for their efforts to deprive Clear Channel of the promotion contract for the AMA supercross series.

In this regard, the Court notes that the jury could have understood the evidence as showing that in dealing with stadium managers, Clear Channel went beyond what protection of its own interests called for, giving rise to an inference that it was acting with a more nefarious purpose in mind. As JamSports points out, Clear Channel's actions vis-a-vis many of the stadiums rationally could be construed as pressure to deny JamSports access to venues that Clear Channel never intended to use, and to deny JamSports access to others beyond any period that Clear Channel actually thought it needed for protection of its own events. The jury was not required to believe the explanations given by Clear Channel's witnesses for these actions and rationally could have concluded, in light of the evidence of ill will discussed in the Court's original ruling and the motive evidence discussed above, that Clear Channel had not shown that its acts of interference were done for any reason other than spite and a desire for revenge. Finally, there was a basis for the jury to find that Clear Channel's later negotiation and execution of a promotion contract with AMA Pro did not illuminate its intent during the period of the alleged interference.

Even though the Court has concluded on reconsideration that entry of judgment as a matter of law in Clear Channel's favor was inappropriate, that does not lead to reinstatement of the verdict. Clear Channel moved in the alternative for a new trial on the ground that the verdict was against the manifest weight of the evidence. A court may grant a new trial if the verdict is

against the manifest weight of the evidence, the damages are excessive (or insufficient), or if for other reasons the trial was not fair to the moving party. *See, e.g., Schick v. Ill. Dept. of Human Servs.*, 307 F.3d 605, 610 (7th Cir. 2002). In this case only the first of these grounds is at issue.

The standard applied in assessing whether a new trial should be granted based on the weight of the evidence is exacting in its own right. A court may not set aside a verdict simply because it would have come to a different conclusion had it been the trier of fact. *See, e.g., Ahern v. Scholz*, 85 F.3d 774, 780 (1st Cir. 1996); *see generally* 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2806 at 69 (1995 & Supp. 2005) ("Wright, Miller & Kane"). Rather, the court must undertake its task with due regard for the role of the jury in our system of justice. As a leading commentator puts it, "a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." 11 Wright, Miller & Kane, *supra*, § 2806 at 74; *see Ryan v. McDonough Power Equipment, Inc.*, 734 F.2d 385, 387 (8th Cir. 1984). The Seventh Circuit has recently stated that a court considering a motion for new trial may not set aside the jury's verdict "if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of the evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 520 (7th Cir. 2004).

There is some indication of conflict in the Seventh Circuit's precedents about whether a court considering a motion for new trial may reweigh the evidence, and whether it must view the evidence in the light most favorable to the party that prevailed. *Kapelanski* and other recent Seventh Circuit cases say the answer to the first question is no and the answer to the second is

15

yes. *See, e.g., Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 920 (7th Cir. 2002); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 935 (7th Cir. 1999) ("In assessing the sufficiency of the evidence we will not reweigh the evidence or judge the credibility of witnesses. If there is a reasonable basis in the record for the jury's verdict, it must stand." ). On the other hand, *Thomas v. Stalter*, 20 F.3d 298, 304 (7th Cir. 1994), seems to give the opposite answer, stating that in assessing a motion for new trial, the trial court is entitled to weigh the evidence for itself and, in doing so, may make its own assessment of the witnesses' credibility.

It is possible that this inconsistency is more apparent than real. The unquestioned authority of a court to order a new trial when a jury's verdict is against the manifest weight of the evidence contemplates that the court considering the matter will do some weighing of its own – how else to determine where the "manifest weight" of the evidence lies? But it seems equally clear that the authority to grant a new trial based on the weight of the evidence is reserved for cases in which it is readily apparent to the trial judge that jury's determination was seriously out of kilter – as the Seventh Circuit has put it, if the verdict "is not rationally connected to the evidence, if it is born out of passion and prejudice, or if it is monstrously excessive." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1067 (7th Cir. 1999). It is important to point out, however, that the standard for granting a new trial based on the manifest weight of the evidence cannot be as narrow as the standard for granting judgment as a matter of law – otherwise the authority to grant a new trial on this basis would be a dead letter.

The Court concludes that this is a case in which the evidence, taken as a whole, falls somewhere between the level necessary to survive judgment as a matter of law and the level necessary to avoid a new trial. The Court has described why the evidence permitted a jury to find

16

that Clear Channel had not sustained its burden of proof on the competition privilege. But the clear weight of the evidence pointed in Clear Channel's favor. In this regard, the Court incorporates what it originally noted in its erroneous ruling granting judgment as a matter of law. The evidence of Clear Channel's contacts with stadium managers formed the core of JamSports' claim of unjustified interference. There is no question that Clear Channel planned to promote a supercross series, with or without the AMA sanction, and the clear weight of the evidence showed that the vast majority of its efforts vis-a-vis stadium managers were done to protect the profitability of its own prospective tour – albeit somewhat heavy-handedly in some instances. In addition, although (as the Court noted earlier) the jury could have viewed Clear Channel's ultimate obtaining of the AMA sanction as indicating nothing of consequence about its intention during the period of the alleged interference, the manifest weight of the evidence reflected that Clear Channel consistently tried to get the AMA sanction before, during, and after the JamSports exclusivity period. For these reasons and the others cited in our original ruling, the Court finds that the jury's determination that Clear Channel had not met its burden of proof on the competition privilege was against the manifest weight of the evidence and orders a new trial on the prospective advantage claim.[5]

This conclusion does not require alteration of the Court's ruling that a new trial as to damages is required on the tortious interference with contract claim. The Court has previously explained why the damage award cannot stand, at least on the undifferentiated verdict that the jury returned, if the only claim sustained is the tortious interference claim. As that claim remains

---

[5] The grant of a new trial will also allow the Court to give a more precise instruction to the jury regarding the nature of Clear Channel's burden on the competition privilege issue.

17

the only one sustained on the issue of liability, a new trial still will be required on the issue of damages.

**Conclusion**

For the reasons stated above, the Court grants JamSports' motion to reconsider [docket # 377-1 & 2]. The Court's order of August 15, 2005 is vacated to the extent it granted judgment as a matter of law in favor of the Clear Channel defendants on Count 18. A new trial is ordered on Count 18, along with the new trial previously ordered as to the issue of damages on Count 3.

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: November 30, 2005